**BOARD OF ASSESSMENT APPEALS of the State of Colorado, and Property Tax Administrator of the State of Colorado, Petitioners,**

v.

**George E. and Lucille BENBROOK, et al., Respondents.**

No. 85SC43.

Supreme Court of Colorado, En Banc.

April 13, 1987.

As Modified on Denial of Rehearing May 11, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Billy J. Shuman, Deputy Atty. Gen., Denver, for petitioners.

Ben S. Wendelken, Sherman, Howard, Baker & Wendelken, Colorado Springs, for respondents.

Stephen H. Kaplan, Denver City Atty., Robert F. Strenski, Asst. City Atty., Denver, for amicus curiae City and County of Denver.

Patrick R. Mahan, Jefferson Co. Atty., George D. Theophiles, Asst. Co. Atty., Golden, for amicus curiae Board of County Com'rs of Jefferson County and Judy Cooper Pettit, Assessor of Jefferson County.

DUBOFSKY, Justice.

We granted certiorari to review the decision of the court of appeals in *Benbrook v.*

*Board of Assessment Appeals,* 695 P.2d 801 (Colo.App.1985), holding that taxpayers, who challenged an increase in property tax assessments because their apartments had been converted to condominiums, had a remedy under sections 39–1–113 and 39–10–114, 16B C.R.S. (1982) (abatement and refund provisions) without first seeking relief under section 39–5–122, 16B C.R.S. (1982) (protest and adjustment provision). The court of appeals determined that despite the fact that the taxpayers were seeking only a partial refund of taxes paid instead of an abatement of the entire amounts paid, they could obtain relief under the abatement and refund provisions because the increase in the assessed valuation of their condominiums was prohibited by statute and thus resulted in an illegal tax, as opposed to an overvaluation that could have been adjusted had the proper statutory procedures been followed. We affirm the judgment of the court of appeals, but we base our resolution on a different construction of the statutory scheme for tax refunds.

## I.

The taxpayers are the owners of 41 of the 48 condominium units known as Valley Hi Condominiums in Colorado Springs. In 1979 the condominiums were converted from apartments and sold by the corporate owner to the taxpayers, many of whom had occupied the units as tenants before the conversion. No physical improvements to the units were made, but because the procedure for valuing individual condominium units differed from the procedure for valuing multi-unit apartment complexes, *see Div. of Property Taxation, Dep't of Local Affairs, State of Colorado, Appraisal Procedures and Instructions for 1981 (AH300)* at 5, the El Paso County assessor increased the assessed valuation of the total complex from $184,240 to $348,657, resulting in property taxes for each unit increasing from $299.44 in 1979 to $598 for 1980.

At the time the assessor increased the valuation, section 39–1–104(11)(b), 16B C.R.S. (1982), provided:

The provisions of subsection (9) and (10) of this section are not intended to prevent the assessor from taking into account, in determining actual value during the intervening years between base years, any unusual conditions in or related to any real property which would result in an increase or decrease in actual value. For the purposes of this paragraph (b), an unusual condition which could result in an increase or decrease in actual value is limited to the installation of an on-site improvement, addition to or remodeling of the structure, change of use of the land, the regulations restricting or increasing the use of the land, or a combination thereof, detrimental acts of nature, and damage due to accident, vandalism, fire, or explosion. When taking into account such unusual conditions which would increase or decrease the actual value of a property, the assessor must relate such changes to the base year level of values as if the conditions had existed at that time.

Ch. 494, sec. 5, § 39–1–104(11)(b), 1977 Colo. Sess. Laws 1728, 1732.[1] Although section 39–1–104(9)(a), 16B C.R.S. (1982), required the assessor to determine the actual value of the condominiums according to the manual and associated data published for 1973 by the state property tax administrator, a directive issued by the administrator, AH300 at 46, required local assessors to consider condominium conversion as a "change of use of the land." Newly constructed condominiums had been assessed at a far higher rate than converted condominiums, and the directive was intended to equalize the tax rate for all condominiums by allowing the assessor to change the tax rate for converted condominiums in a year other than a base year.

The El Paso County assessor mailed a notice of valuation to the owners of the

---

**1.** The current version of this section allows "the creation of a condominium ownership of real property as recognized in the 'Condominium Ownership Act,' article 33 of title 38, C.R.S." to result in an increased valuation during the intervening years between base years. § 39–1–104(11)(b)(I), 16B C.R.S. (1986 Supp.).

Valley Hi Condominiums on June 17, 1980.[2] After receipt of the notices, seven or eight of the condominium owners filed protests with the county assessor under section 39–5–122, 16B C.R.S. (1982). The assessor denied the protests, and two of the owners appealed to the county board of equalization, which also denied the protests. Only one of the owners, Melvyn Brooks, appealed to the Colorado Board of Assessment Appeals (the board), and the board ruled in Brooks' favor. The board determined that condominium conversion was not a "change of use of the land" under section 39–1–104(11)(b) and, therefore, the increased assessments were illegal.[3] The district court for El Paso County affirmed the board's decision.[4] The county did not appeal the district court ruling, and the correctness of that ruling is not before us.[5]

The taxpayers, who are the owners of 41 of the other condominiums in Brooks' complex, paid their 1980 taxes and subsequently filed petitions with the El Paso County commissioners in June, July and August 1981, for a partial abatement and refund of 1980 taxes under sections 39–1–113 and 39–10–114, 16B C.R.S. (1982).[6] The county commissioners recommended to the state property tax administrator that a portion of the taxes be abated and the refunds granted, based on the decision in the Brooks' case. The administrator denied the commissioners' application for abatement under section 39–2–116, 16B C.R.S. (1982), because the taxpayers had failed to exhaust their administrative remedies in 1980 under the protest and adjustment procedures in section 39–5–122. Each taxpayer then appealed to the board under section 39–2–125(1)(b)(I), 16B C.R.S. (1982). The board consolidated the appeals and, after a hearing, affirmed the administrator's decision. The taxpayers appealed to the district court under section 39–8–108(2), 16B C.R.S. (1982), and the district court reversed the board's ruling on the basis that the taxpayers need not exhaust their administrative remedies under section 39–5–122 before challenging an illegal increase in assessment of their condominiums and qualifying for a partial abatement and refund of taxes paid.

The court of appeals affirmed the district court ruling, relying on a line of Colorado cases holding that if a tax is wholly illegal or entirely erroneous and incapable of adjustment, a taxpayer may file an abatement and refund petition. *Benbrook*, 695 P.2d at 803. The court of appeals agreed with the district court's characterization of the *increase* in the tax imposed on the taxpayers' condominiums as "wholly illegal and entirely erroneous because the increase in the assessed valuation of the condominium units ... was prohibited by statute." *Id.* The court of appeals rejected the board's determination that the taxpayers should have followed the protest and adjustment procedure because the increase in the assessed valuation of the units was

2. The assessor mailed the notice of valuation 17 days after the deadline in section 39–5–121(1), 16B C.R.S. (1982). From the date of mailing, only eight days remained for the taxpayers to protest the assessment under section 39–5–122(2), 16B C.R.S. (1982). The taxpayers have not asserted that this delay excused them from complying with section 39–5–122. *See Lamm v. Barber*, 192 Colo. 511, 565 P.2d 538 (1977).

3. The board made similar rulings in *Collins v. Board of Assessment Appeals*, 697 P.2d 1138 (Colo.1985), and *Hoffman v. Colorado State Bd. of Assessment Appeals*, 683 P.2d 783 (Colo.1984).

4. When the board granted Brooks' request for relief, it recommended that the matter was one of statewide concern under section 39–8–108(2), 16B C.R.S. (1982), which permitted the county to seek judicial review. In the current version of the statute, the county may appeal the board's adverse ruling without a recommendation of

statewide concern. § 39–8–108(2), 16B C.R.S. (1986 Supp.).

5. Because section 39–1–104(11)(b) has been amended, *see* note 1, *supra*, the question of the legality of an increase in assessed valuation of condominiums converted from apartments between base years will not arise again.

6. Although several of the taxpayers had commenced a protest seeking an adjustment of taxes under section 39–5–122, 16B C.R.S. (1982), the record before the board reveals that they dropped these protests after they learned from Brooks that an abatement and refund might be possible under section 39–10–114 if he prevailed on his protest under section 39–5–122. Instead of pursuing individual protests, the taxpayers contributed to the costs of Brooks' protest.

an overvaluation capable of adjustment. *Id.*

## II.

The court of appeals' bifurcated approach to administrative remedies in the property tax code—protest and adjustment for an overvaluation in assessment, and abatement and refund for a tax that is illegal—leaves unresolved the appropriate route to seek administrative relief if a tax is partially illegal. As reflected in a series of opinions from this court and the court of appeals, including the instant case, a taxpayer seeking a partial refund of taxes based on an illegal assessment does not have a clear choice of the appropriate administrative remedy. *See City and County of Denver v. Athmar Park Buildg. Co.,* 151 Colo. 424, 378 P.2d 638 (1963); *Simmons v. Board of County Com'rs of Jefferson County,* 146 Colo. 392, 361 P.2d 769 (1961); *Weidenhaft v. Board of County Com'rs of El Paso County,* 131 Colo. 432, 283 P.2d 164 (1955); *Northcutt v. Burton,* 127 Colo. 145, 254 P.2d 1013 (1953); *Coquina Oil Corporation v. Larimer County Board of Equalization,* No. 85CA0756, slip op. (Colo.App. Mar. 5, 1987); *Writer Corp. v. Board of Assessment Appeals,* 721 P.2d 1212 (Colo.App.1986), *cert. granted* (July 16, 1986); *Alpenrose Unit Week Ass'n v. Board of Assessment Appeals of State,* 713 P.2d 932 (Colo.App. 1985); *Schmidt-Tiago Const. Co. v. Property Tax Adm'r for State of Colo.,* 687 P.2d 528 (Colo.App.1984). The confusion stems from a misapprehension of the property tax code's remedial scheme that first appeared in this court's decision in *Northcutt.*

The statutory provisions at issue in this case have been part of the general property tax law in Colorado since 1902. *Miller v. Board of County Com'rs of City and County of Denver,* 92 Colo. 425, 21 P.2d 714 (1933). To accommodate the dual needs in Colorado for a reliable constant source of revenue for the government and a remedy for taxpayers who sought to enjoin tax collections in the courts because they believed they were carrying a disproportionate share of the tax burden, Colorado established a statutory remedy that recognized some injunctive actions in equity under the "traditional equity head of fraud" but required a taxpayer to exhaust administrative remedies before going to court if an assessment is deemed excessive. Ela, *Some Aspects of Colorado Taxpayers' Remedies,* 23 Rocky Mtn.L.Rev. 145, 146, 160 (1950); *see also Miller v. Board of County Com'rs of City and County of Denver,* 92 Colo. 425, 21 P.2d 714 (1933).

Section 39-5-122(2), 16B C.R.S. (1986 Supp.), describes the first step of the administrative remedy:

If any person is of the opinion that his property has been valued too high, or has been twice valued, or is exempt by law from taxation, or that he did not own taxable property on the assessment date, or that property has been erroneously assessed to him, he may ... protest....[7]

If the assessor finds that a valuation is erroneous or otherwise improper, he is required to correct the error; if the assessor declines to change the valuation, he states his reasons in writing on a prescribed form and mails the form denying the protest to the taxpayer. § 39-5-122(2), 16B C.R.S. (1982). A taxpayer whose protest has been denied by the assessor may appeal by petition to the county board of equalization under section 39-8-106, 16B C.R.S. (1982). If the county board of equalization grants the petition, the assessor is required to adjust the valuation for assessment of the taxpayer's property, but if the petition is denied, the taxpayer may appeal to the board of assessment appeals. § 39-8-108(1), 16B C.R.S. (1982).[8] If the decision of the board is against the taxpayer, the taxpayer may petition the district court of the county where his property is located for judicial review of the board's decision.

---

7. Section 39-5-122, 16B C.R.S. (1986 Supp.), allows a taxpayer to either appear before the assessor or file a written objection by mail; a written objection was not allowed before 1984.

8. Section 39-8-108(1), 16B C.R.S. (1982), was amended in 1985 to allow a taxpayer to appeal to the board of assessment appeals or directly to the district court.

§ 39–8–108(2), 16B C.R.S. (1982). If the taxpayer prevails before the board or the district court, the county treasurer is required to pay the appropriate refund of taxes to the taxpayer upon presentation of a certified copy of the order or judgment. § 39–8–109, 16B C.R.S. (1982).

Under section 39–5–122, the assessor is required to hear and decide, beginning the first working day of June and concluding by June 25, all protests concerning valuation of taxable real property for the current year.[9] If the assessor denies a taxpayer's protest, the taxpayer has until the second Monday in July to appeal the assessor's decision to the county board of equalization. § 39–8–106(1)(a), 16B C.R.S. (1982). The board of equalization is required to render its decision by the close of business on the last business day of July. § 39–8–107, 16B C.R.S. (1982). There are recently enacted time limits for action by the board of assessment appeals;[10] an appeal before the board usually will be decided within six months, while an appeal to the district court often takes longer. *See* Low, *Appealing Property Tax Assessments*, 15 Colo.Law. 798, 804 (1986).

Because the decisions of the board of assessment appeals and the district court may occur after the challenged property taxes are due,[11] section 39–8–109, 16B C.R.S. (1982), provides for a refund of taxes should the taxpayer prevail on appeal. If the taxpayer persuades the assessor that his valuation should be adjusted before his property tax is levied, the assessed valuation is adjusted; otherwise, the successful taxpayer's protest results in a refund.

After the assessor determines the valuation for assessment of all taxable property located in the county, the board of county commissioners in each county, no later than November 15 in each year, levies property taxes against the valuation for assessment. § 39–1–111, 16B C.R.S. (1982 and 1986 Supp.). In contrast to section 39–5–122, which applies to an assessor's valuation for assessment, the abatement and refund provisions in sections 39–10–114 and 39–1–113, 16B C.R.S. (1982), apply to taxes that have been erroneously or illegally levied by action of the county commissioners. Section 39–10–114(1)(a) provides:

> If taxes have been levied erroneously or illegally, whether due to erroneous valuation for assessment, irregularity in levying, or clerical error, the treasurer shall report the amount thereof to the board of county commissioners, who shall proceed to abate such taxes in the manner provided by law. If such taxes have been collected by the treasurer, the board of county commissioners shall authorize refund of the same in the manner provided by law. However, in no case shall an abatement or refund of taxes be made more than six years after the taxes were due.

Section 39–1–113 provides:

> No abatement or refund of taxes erroneously or illegally levied shall be made by the board of county commissioners unless a hearing is had thereon, at which hearing the assessor shall have the opportunity to be present. Whenever any abatement or refund is recommended by

---

**9.** All protests of assessed valuation must be filed by June 25 under section 39–5–122(4), and failure to meet that deadline means that the valuation cannot be protested until the following year. *See* Low, "Appealing Property Tax Assessments," 15 Colorado Lawyer 798, 803 (1986); *see also City and County of Denver v. Athmar Park Bldg. Co.,* 151 Colo. 424, 378 P.2d 638 (1963).

**10.** Section 39–2–125(1)(c), 16B C.R.S. (1986 Supp.), provides that the board of assessment appeals shall: "Hear appeals from decisions of county boards of equalization filed not later than thirty days after the entry of any such decision. Appeal decisions shall be rendered within thirty days after the date of hearing or by

the last day of the same calendar year, whichever is the earlier date. However, if the board by resolution finds and determines that, as a result of an extraordinary work load, all hearings cannot be completed before the last day of the same calendar year, the board may schedule hearings for a period of up to the first four months of the succeeding calendar year and shall render a decision within thirty days after the date of hearing or by May 1, whichever is the earlier date."

**11.** Section 39–10–104, 16B C.R.S. (1982), indicates that property taxes generally are due on the last day of April of the year following that in which the taxes are levied.

the board of county commissioners, an application therefor, reciting the amount of such abatement or refund and the grounds upon which it should be allowed, shall be submitted to the [state property tax] administrator for his review pursuant to section 39–2–116. If an application is approved, the board of county commissioners shall order the abatement of taxes pro rata for all levies applicable to such property, or, in the case of a refund, the board of county commissioners shall order the refund of taxes pro rata by all taxing jurisdictions receiving payment thereof. However, in no case shall an abatement or refund of taxes be made more than six years after the taxes were due.[12]

These sections apply to the refund of taxes paid under section 39–8–109 after a taxpayer who sought administrative relief under section 39–5–122 prevailed before the board of assessment appeals or the district court. They also apply when property taxes cannot be challenged under section 39–5–122. *Lamm v. Barber,* 192 Colo. 511, 565 P.2d 538 (1977); *Modular Communities, Inc. v. McKnight,* 191 Colo. 101, 550 P.2d 866 (1976); *First Nat. Bank of Greeley v. Patterson,* 65 Colo. 166, 176 P. 498 (1918);[13] *see* Ela, 23 Rocky Mtn.L.Rev. 145.

■ The statutes were interpreted as described above until this court, in *Northcutt v. Burton,* 127 Colo. 145, 152, 254 P.2d 1013, 1017 (1953), announced that "erroneous assessment" as used in what is now section 39–10–114 meant "more than mere over-assessment and referred to a tax levy that for any reason is wholly illegal or invalid."[14] Thus, the abatement and re-

**12.** Under section 39–2–116, 16B C.R.S. (1982), the state property tax administrator is to review applications submitted by county commissioners for abatement and refund of taxes, and if the application is found to be in proper form and recommended in conformity with the law, the administrator is to approve the application. If the administrator disapproves the application, the disapproval may be appealed to the board of assessment appeals. § 39–2–125(1)(b), 16B C.R.S. (1982).

**13.** This court, in *First National Bank of Greeley v. Patterson,* 65 Colo. 166, 176 P. 498 (1918), distinguished between a taxpayer who complained of an alleged overvaluation of property for taxation purposes and a taxpayer who complained of actual fraud, intentional wrong, or deprivation of a constitutional or statutory right. The court stated, "Mere errors or excess in valuation, or hardship, or injustice of the law, or any grievance which can be remedied by application to agencies specially invested with power to act in the premises, either before or after payment of taxes, do not call for a court of equity to interpose by injunction to stay collection of a tax." (Citation omitted.) 65 Colo. at 174, 176 P. at 501.

**14.** *Northcutt v. Burton,* 127 Colo. 145, 254 P.2d 1013 (1953), involved an original proceeding in this court in which taxpayers asked that the 1952 reappraisal of Baca County property be declared illegal and that no taxes be assessed against them for the year. This court held that the alleged defects in the reappraisal procedure did not prevent the taxpayers from discovering the assessed valuation of their property and that their challenge was really a protest that property had been overvalued. In that context the *Northcutt* court referred to the abatement procedure as applying to taxes that are wholly illegal because the taxpayers had pointed out the "erroneous assessment" language in the abatement provision. The court held that the taxpayers did not exhaust their administrative remedies under the adjustment and refund provision, and that they were not entitled to relief under the abatement procedure.

*Northcutt* relied on *First National Bank of Greeley v. Patterson,* 65 Colo. 166, 174, 176 P. 498, 501 (1918), for the statement that "erroneous assessment" referred to a tax levy that is wholly illegal or invalid. *First National Bank, id.,* quoted a United States Supreme Court opinion, *Union Pac. R.R. Co. v. Weld County,* 247 U.S. 282, 285, 38 S.Ct. 510, 512, 62 L.Ed. 1110 (1918): "That the taxes were levied for state, school district, and town, as well as for county, purposes, is not material; for it is apparent from the Colorado statutes and decisions that the section covers broadly the whole of the tax that is found to have been erroneous or illegal, regardless of the purpose for which it was levied and placed on the county tax roll." The Supreme Court was summarizing the portion of what is now section 39–1–113 that refers to "abatement of taxes pro rata for all levies applicable to such property, or, in the case of a refund, the board of county commissioners shall order the refund of taxes pro rata by all taxing jurisdictions receiving payment thereof." In other words, *First National Bank* was describing the abatement and refund provisions as applying to a tax that has already been levied, paid, and presumably disbursed to a number of taxing jurisdictions. All of the portion of the tax that is declared illegal is to be refunded by all of those jurisdictions. The language in *First National Bank* does not mean that before the abatement and refund provision can apply, an entire tax, as opposed to a portion of a tax, levied on a property must be illegal.

fund provisions in sections 39–10–114 and 39–1–113 no longer applied to refunds ordered under what is now section 39–5–122; instead, the opinion establishes a separate administrative method for seeking review of an illegal tax, a method that required taxpayers to challenge the entire assessment against their property and request an abatement from the county commissioners on the ground that the tax was wholly illegal. If the commissioners denied the abatement, the taxpayers could seek relief in court.

Two years later in *Weidenhaft v. Board of County Com'rs of El Paso County*, 131 Colo. 432, 283 P.2d 164 (1955), the court commented that if the taxpayers wished to take advantage of the then unlimited time period to request abatement, they would have to claim that the entire tax was illegal. The court, citing *Northcutt*, said that "attention should be called to the well-established rule that where one attempts to maintain a proceeding for a tax refund pursuant to the statute above cited [the abatement provision], he has the burden of showing that the tax was illegally laid, is erroneous in its entirety, and incapable of adjustment. If the property be assessed too high, or illegally assessed because of error capable of adjustment, then the administrative remedies must be pursued." 131 Colo. at 438, 283 P.2d at 167–168.

In a subsequent case involving facts similar to those presently before us, this court considered the legality of a new method of appraising land used as trailer courts. *Simmons v. Board of County Com'rs of Jefferson County*, 146 Colo. 392, 361 P.2d 769 (1961). Before 1957 the Jefferson County Assessor had assessed the taxpayers' trailer courts in the same manner as similar land in the neighborhood was assessed although none of the other land was used for trailer courts. The taxpayers protested the increased assessment to the county assessor, who denied their protests. They then appealed to the county board of equalization, and the board denied their protests. Rather than appealing the board's decision to the district court, they paid the increased property tax under protest. Other owners of trailer courts who had followed the administrative remedy appealed the board's denial to the district court in a timely fashion and paid the taxes under protest. The court declared the assessments in those cases grossly excessive and entered judgments in the amount of taxes paid in excess of the lawful assessment. After the other owners succeeded in court, the taxpayers petitioned the board of county commissioners under the abatement provision for a refund in an amount representing the alleged illegal increase in their assessment. The county commissioners de-

The taxpayers in *Miller v. Board of County Com'rs*, 92 Colo. 425, 21 P.2d 714 (1933), advanced an argument similar to that in *Northcutt*. The taxpayers pointed to language in section 7447, C.L. 1921 at 1906, that provided: "Each county is responsible to the state for the full amount of tax levied for state purposes, excepting such amounts as are certified to be unavailable, double or erroneous assessments, as provided in this act, and in all cases where any person shall pay any tax, interest or cost, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, or clerical or other errors or irregularities, the board of county commissioners shall refund the same without abatement or discount to the taxpayer." This court rejected the argument on the basis that "the words 'without abatement or discount' in said section 7447 were intended to refer to so much of the erroneous tax as had been paid by the county to the state." 92 Colo. at 431, 21 P.2d at 717.

*Northcutt* also relied on *South Broadway Nat. Bank v. City and County of Denver*, 51 F.2d 703 (10th Cir.1931), a case involving overvaluation for assessment of bank shares. The court described abatement as the appropriate avenue of recovery when taxes paid are found to be erroneous or illegal. *Id.* at 705. The court circumvented the erroneous assessment language in section 7447 by referring to a decision by the Arkansas Supreme Court, *Clay County v. Brown Lumber Co.*, 90 Ark. 413, 119 S.W. 251 (1909), in which the court held that excessive valuation is not the equivalent of erroneous assessment. The Arkansas court defined erroneous assessment as a jurisdictional defect that gives a taxpayer the right to invoke judicial remedies against the illegal acts of an assessor or board of equalization and included within the definition property exempt from taxation and property not located within the county. Section 39–5–122, however, subjects property exempt from taxation to the protest and adjustment administrative remedy.

nied the request for abatement and refund, and the taxpayers sought relief in district court. The district court dismissed their claims for abatement and refund on the basis that the remedy for overvaluation of real property is under the protest and adjustment provision now found at section 39–5–122. This court affirmed the district court ruling, determining that the taxpayers tacitly had recognized that their case was one of overvaluation because they did not seek recovery of the entire tax paid by them. The court, quoting extensively from *Northcutt* and *Weidenhaft,* held that because the taxpayers did not exhaust their administrative remedies under the excessive valuation provision of the statute (the protest and adjustment provision), they were not entitled to seek relief under the abatement provision because the language "erroneous assessment" in the abatement provision referred only to a tax that was wholly illegal. *See City and County of Denver v. Athmar Park Bldg. Co.,* 151 Colo. 424, 378 P.2d 638 (1963).[15]

This court abandoned the "wholly illegal" requirement for abatement in *Modular Communities, Inc. v. McKnight,* 191 Colo. 101, 550 P.2d 866 (1976) and *Lamm v. Barber,* 192 Colo. 511, 565 P.2d 538 (1977). In *Modular Communities* a taxpayer did not have notice of an overvaluation problem in time to challenge it under the protest and adjustment provision. The court read the abatement provision as allowing a taxpayer to seek relief from overassessment of his property when the taxpayer's knowledge of the excessive charge was acquired after the statutory deadline for protest.

In *Lamm v. Barber* the state board of equalization sought mandamus to compel three county assessors to implement increases in their assessment abstracts as ordered by the board to achieve statewide equalization of property assessments. The assessors argued that taxpayers were denied due process when their assessed valuations were increased without affording them individual hearings under the protest and adjustment procedure. This court acknowledged that a taxpayer whose property had been revalued would not have a right to a hearing under section 39–5–122 before paying the tax because the time specified in the statute had passed and because the assessor's original assessments were not involved. Instead, the court determined that a taxpayer had a remedy through the abatement and refund procedure in sections 39–1–113 and 39–10–114, including "a right to protest to the county treasurer and a full hearing before the county commissioners followed by access to the courts after exhausting the statutory administrative remedies." 192 Colo. at 524, 565 P.2d at 547. The court explicitly noted that one of the grounds for abatement and refund in section 39–10–114 is "erroneous valuation for assessment." *Id.*

The assessors in *Lamm v. Barber* argued that the abatement and refund provisions did not provide a remedy because under them a taxpayer is not afforded an opportunity to contest an assessment increase that the taxpayer claims is higher than it should be but admittedly is not "illegal" or "erroneous." The assessors relied on the language in *Northcutt* that described the term "erroneous assessment" as implying "more than mere over-assessment and refers to a tax levy that for any reason is wholly illegal or invalid." 127 Colo. at 152, 254 P.2d at 1017. This court, in *Lamm v. Barber,* declined to follow the language in *Northcutt* that restricted the abatement and refund remedies, and held

---

**15.** In *City and County of Denver v. Athmar Park Bldg. Co.,* 151 Colo. 424, 378 P.2d 638 (1963), the taxpayer paid property taxes for 1956, 1957 and 1958, marking its checks "paid under protest" because it believed that the buildings in its shopping center were overvalued. In 1959 the taxpayer filed a protest with the assessor that resulted in an adjustment, a decreased valuation. The taxpayer then sought a refund under the abatement provisions for the excess taxes paid in earlier years. This court, relying on the *Northcutt, Weidenhaft* and *Simmons* cases, held that a refund was not available because this was a case of excessive valuation and not one where a tax was wholly illegal. The court noted that the requirement of exhausting administrative remedies is intended to provide "certainty in tax revenues to operate the government." 151 Colo. at 428, 378 P.2d at 640.

that section 39–10–114 "in plain terms clearly provides administrative remedies for correction of any substantial injustice resulting from 'erroneous valuation for assessment' of a taxpayer's property." 192 Colo. at 526, 565 P.2d at 549. The court determined that the availability of the abatement and refund procedure after payment of the tax was sufficient to comply with due process.

Despite this court's disavowal of the "wholly illegal or entirely erroneous" language in *Northcutt,* the court of appeals revived the language in several cases, including the instant one. In *Schmidt-Tiago Const. Co. v. Property Tax Adm'r for State of Colo.,* 687 P.2d 528 (Colo.App. 1984), the court of appeals discussed at length *Northcutt, Weidenhaft,* and *Simmons* without mentioning *Lamm v. Barber.* In the instant case, the court of appeals relied on *Schmidt-Tiago* and limited the abatement and refund provision to a property tax that is "wholly illegal or entirely erroneous." 695 P.2d at 803. *See also Coquina Oil Corporation v. Larimer County Board of Equalization,* No. 85CA0756, slip op. (Colo.App. Mar. 5, 1987); *Writer Corp. v. Board of Assessment Appeals,* 721 P.2d 1212 (Colo. App.1986), *cert. granted* (July 6, 1986); *Alpenrose Unit Week Ass'n v. Board of Assessment Appeals of State,* 713 P.2d 932 (Colo.App.1985) (both cases relying on *Northcutt, Weidenhaft, Simmons,* and *Schmidt-Tiago,* with no reference to *Lamm v. Barber* ).

In the case before us, the board of assessment appeals argues the *Northcutt* line of cases, particularly the *Simmons* decision involving taxpayers who relied on the relief obtained by other trailer court owners under the protest and adjustment provision to seek an abatement and refund of the taxes they had paid on the increased assessment of their trailer courts. The court in *Simmons* held that because the taxpayers were not contending that the tax they had paid was wholly illegal they were not entitled to relief under the abatement provision. The condominium owner-taxpayers in the instant case rely on the language in sections 39–1–113 and 39–10–114 and *Lamm v. Barber,* contending that they are entitled to an abatement and refund for payment of a tax that was declared illegal by the district court when one of the condominium owners successfully obtained relief through the protest and adjustment procedure. Although this court in *Lamm v. Barber* avoided directly overruling *Northcutt* on the basis that the "wholly illegal" language was dictum, we cannot avoid addressing those cases because *Simmons* would be controlling were we persuaded that the *Northcutt* line of cases was correctly decided.

We overrule the language in *Northcutt, Weidenhaft,* and *Simmons* describing the abatement and refund provision as applicable only if a tax is wholly illegal or entirely erroneous and incapable of adjustment. The *Northcutt* rationale ignores the statutory scheme for obtaining relief from an error in assessment or an erroneous or illegal imposition of property taxes. *Northcutt* refused to equate excessive valuation under the protest and adjustment provision with "erroneous valuation for assessment" in the abatement and refund provision. *Lamm v. Barber* held that the two terms refer to the same process of assessment; the opinion restored the administrative process for protesting erroneous assessment or seeking refund of an erroneous or illegal tax to its original statutory scheme. As the facts in all of the cases involving property taxes illustrate, the scheme is designed to accommodate a variety of types of challenges, provided that the complaining taxpayer gives the county and state officials, who are responsible for insuring adequate revenue to operate our government, notice of the alleged erroneous assessment or illegal tax and an opportunity to respond within the administrative framework.

The court of appeals ruled in favor of the taxpayers in the instant case by determining that because an increase in the assessment of the converted condominiums was prohibited, the taxes imposed as a result of such an increase were also prohibited and wholly illegal rather than simply the result of an overvaluation. 695 P.2d

803–804. Although we disagree with the court of appeals' reasoning, we conclude that the taxpayers' reliance on the abatement and refund procedures in sections 39–1–113 and 39–10–114 was sufficient to exhaust their administrative remedies. One of the owners of a converted condominium pursued administrative relief under the protest and adjustment procedure in section 39–5–122 on the basis that his property had been overvalued.[16] After exhausting administrative remedies, the owner obtained a declaration from the district court that the imposition of an increased tax on his converted condominium was illegal. The county did not appeal the district court ruling. Thus, the other owners of identical condominiums became entitled to seek relief under the abatement and refund provisions in section 39–1–113 and 39–10–114 because the tax, which by then had been levied, had been declared illegal. Each of the other owners applied under sections 39–1–113 and 39–10–114 for an individual abatement and refund of that portion of taxes paid that was declared illegal. There is no need to characterize the tax paid as wholly illegal before the taxpayer may obtain abatement and refund.

Judgment affirmed.

16. The protest of the condominium owner who exhausted his administrative remedies under section 39–5–122 was not that his property had been valued too high but that a condominium conversion was not a "change of use of the land," and therefore the increased assessment was illegal in a year other than a base year. The property owner, not certain whether a court later would declare the increased tax he had paid illegal because it was based on an erroneous valuation or illegal because it could not be imposed in that year, followed the adjustment and refund provision in section 39–5–122. Our holding today should not be construed to require that a taxpayer protesting a tax on a basis other than those set out in section 39–5–122 ("If any person is of the opinion that his property has been valued too high, or has been twice valued, or is exempt by law from taxation, or that he did not own taxable property on the assessment date, or that property has been erroneously assessed to him, he may ... protest....") must exhaust the administrative remedies under section 39–5–122. There are a number of situations in which a taxpayer might seek relief from local and state officials under sections 39–1–113 and 39–10–114. *See Modular Communities, Inc. v. McKnight,* 191 Colo. 101, 550 P.2d 866 (1976); Ela, 23 Rocky Mtn.L.Rev. at 153–154. The taxpayers here may have been entitled to seek relief under sections 39–1–113 and 39–10–114 without first seeking an adjustment of their assessments under 39–5–122 because they could argue that their taxes were levied erroneously or illegally due to erroneous valuation for assessment because the assessor changed the valuation for assessment in a non-base year.