**YALE INVESTMENTS, INC., a Colorado corporation, as successor in interest to Resolution Trust Corporation as Receiver for Southwest Federal Savings Association, Petitioner–Appellant,**

v.

**PROPERTY TAX ADMINISTRATOR, Respondent–Appellee,**

and

**Board of Assessment Appeals of the State of Colorado, Appellee.**

**No. 94CA1071.**

Colorado Court of Appeals, Div. V.

May 4, 1995.

Holley, Albertson & Polk, P.C., Scott D. Albertson, Eric E. Torgersen, Golden, for petitioner-appellant.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Clifton D. Hypsher, Asst. Atty. Gen., Denver, for respondent-appellee and appellee.

Opinion by Judge KAPELKE.

In this property tax case, petitioner, Yale Investments, Inc. (Taxpayer), appeals from the order of the Board of Assessment Appeals (BAA) affirming the denial of an abatement petition for tax year 1990. We affirm.

This appeal involves thirty-five parcels of land located in the Red Rocks Business Park (the Park), which is part of the Mount Carbon Metropolitan District (the District) in Jefferson County. Taxpayer purchased the property in December 1993 from the Resolution Trust Corporation (RTC) as receiver for Southwest Federal Savings Association (Southwest).

Taxpayer purchased the property subject to the real property taxes and assumed the obligation to pay them. By assignment, Taxpayer acquired RTC's right to claim an abatement and refund of the property taxes and RTC's claims in this abatement proceeding.

At the time of the purchase, the property was burdened by approximately $23.5 million in general obligation bonds which had been issued to finance the District's construction of certain improvements to the Park in the early 1980s. The District defaulted on the bonds and has been insolvent since 1988.

The property was assessed for tax years 1989 and 1990 at approximately $1.2 million. In December 1991, RTC filed petitions for an abatement of taxes for each parcel for tax years 1989 and 1990, contending that the property had been overvalued for those tax years. The principal contention was that the county's valuation had failed to take into account the "negative impact of the failure of the Mount Carbon Metropolitan District." RTC maintained that the property had a "nominal, if not negative, value" and requested that it be assessed at $200 per parcel, the County's minimum per lot value.

The Board of County Commissioners (BOCC) recommended that the petition be granted for both tax years and, pursuant to § 39-1-113(3), C.R.S. (1994 Repl.Vol. 16B), forwarded the petition and the BOCC's recommendation to the Property Tax Administrator for review.

The Administrator approved the BOCC's recommendation for tax year 1989 and granted the abatement petition as to taxes paid for that year. However, the Administrator rejected the BOCC's recommendation for tax year 1990 and denied the petition for an abatement for that year. The BAA affirmed

the denial. Taxpayer, which was substituted for RTC following the BAA's ruling, now appeals from that determination.

## I.

Taxpayer first contends that the BAA erred in denying the 1990 abatement petition because the taxes were illegal or based upon an erroneous valuation. We disagree.

■ At the outset, we note that the evaluation of the credibility of the witnesses and the weight, probative value, and sufficiency of the evidence is within the fact-finding province of the BAA. *See Board of Assessment Appeals v. Arlberg Club,* 762 P.2d 146 (Colo.1988); *Gyurman v. Weld County Board of Equalization,* 851 P.2d 307 (Colo.App.1993). On review, we may not reweigh the evidence or substitute our judgment for that of the BAA, and we may not set aside the BAA's determination unless it is arbitrary and capricious or unsupported by any competent evidence. *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27 (Colo.1990); §§ 24–2–106(7) & 24–4–106(11)(e), C.R.S. (1988 Repl.Vol. 10A).

A petition for abatement or refund of real property taxes is governed by § 39–10–114(1)(a)(I), C.R.S. (1994 Repl.Vol. 16B), which provides in relevant part that:

(A) Except as otherwise provided ... if taxes have been levied erroneously or illegally, whether due to erroneous valuation for assessment, irregularity in levying, clerical error, or overvaluation, the treasurer shall report the amount thereof to the board of county commissioners, which shall proceed to abate such taxes in the manner provided by law.

. . . .

(D) ... An abatement or refund of taxes based upon the grounds of overvaluation of property shall be made only for taxes levied on and after January 1, 1988.... *No abatement or refund of taxes levied on and after January 1, 1990, shall be made based upon the ground of overvaluation of property if an objection or protest to such valuation has been made and a notice of*

*determination has been mailed to the taxpayer....* (emphasis added)

Thus, under the clear language of § 39–10–114(1)(a)(I)(D), C.R.S. (1994 Repl.Vol. 16B), the Administrator is not permitted to abate taxes for tax year 1990 based on the ground of overvaluation if the taxpayer has already protested the valuation and been notified in writing of the determination of the protest.

Here, the Administrator denied the petition for abatement of the 1990 taxes because there had already been a protest filed on behalf of Taxpayer's predecessor, Southwest. The records of the Jefferson County Assessor (Assessor) indicated that Tax Assessment Associates, Inc. (TAA) had filed a protest on behalf of Southwest challenging the valuation of the property for tax year 1990 and that the Assessor had mailed notices of the denial to TAA.

The Administrator granted the petition for an abatement of the 1989 taxes, however, because the statutory limitation on the Administrator's authority to grant abatement petitions involving property for which protests based on overvaluation had been filed does not apply to taxes levied in 1989. *See* § 39–10–114(1)(a)(I)(D).

### A.

Relying on *Board of Assessment Appeals v. Benbrook,* 735 P.2d 860 (Colo.1987), Taxpayer contends that the abatement petition relative to the 1990 taxes was not "based on the ground of overvaluation," but rather on the ground that the tax was illegal or based upon an erroneous valuation. Taxpayer maintains that the provision of § 39–10–114(1)(a)(I)(D) regarding previous protests is therefore inapplicable. We do not agree.

In *Board of Assessment Appeals v. Benbrook, supra,* the taxpayer's building had been converted from apartments to condominiums in 1979. Although no improvements had been made to the condominiums, the county assessor interpreted the conversion as a "change of use of the land" and, pursuant to § 39–1–104, C.R.S. (1994 Repl.Vol. 16B), reassessed the property, doubling the 1980 property tax for each unit.

Several of the condominium owners protested the assessment on the ground that the property had been overvalued. The assessor denied all the protests, and only one of the owners appealed. The BAA ruled that the conversion of apartments to condominiums did not constitute a "change in the use of land" and that the assessor's revaluation of the property was thus "illegal."

Based on this ruling, the other condominium owners filed abatement petitions with the Board of County Commissioners. The Board recommended that the petitions be granted, but the Property Tax Administrator denied them because the taxpayers had discontinued their protests following issuance of the county assessor's decision.

The supreme court ultimately held that the tax increase was partially illegal and concluded that a taxpayer is not precluded from appealing a partially illegal tax assessment merely because a similarly situated taxpayer had pursued a protest and adjustment procedure to final judgment. *Board of Assessment Appeals v. Benbrook, supra; see also Gates Rubber Co. v. State Board of Equalization,* 770 P.2d 1189 (Colo.1989).

Relying on *Benbrook,* Taxpayer argues that by approving RTC's petition for abatement of the 1989 taxes the Administrator had determined that the 1989 taxes were either illegal or erroneous. Therefore, Taxpayer maintains, because there was no evidence of changed or unusual conditions between 1989 and 1990, the 1990 taxes must also be considered illegal. We disagree.

Overvaluation was the sole basis for relief alleged in the abatement petitions, and the Administrator's ruling as to the 1989 tax year was based exclusively on a finding that the value placed on the property was excessive. Contrary to Taxpayer's assertion, the Administrator did not conclude that the 1989 tax was wholly or partially illegal or that it was erroneous for a reason other than overvaluation.

■ Thus, here, unlike in *Benbrook,* the taxpayer's challenge is based on a claim of overvaluation, not illegality. The Administrator's determination that the 1989 tax was excessive does not render the tax illegal or otherwise erroneous and does not thereby provide an avenue for Taxpayer to obtain an abatement.

Thus, we conclude that the BAA properly denied Taxpayer's petition for an abatement of the 1990 property taxes based on the claim of illegality.

### B.

Taxpayer next contends that there was insufficient evidence for the BAA to conclude that Taxpayer's predecessor, Southwest, had filed a protest of the 1990 taxes. More specifically, Taxpayer asserts there was no evidence that Southwest had submitted written authorization for TAA to file a protest on Southwest's behalf and that TAA was not authorized to do so. Again, we disagree.

■ At the hearing before the BAA, an appraiser for the Jefferson County Assessor testified that the Assessor's records reflected that TAA had filed protests of the 1989 and 1990 valuations of the property on behalf of Southwest. The witness specifically testified that the Assessor's records indicated that TAA had submitted a "letter of authority" from Southwest and that the Assessor would not have acted on the protest had TAA not submitted such a written authorization.

This testimony provides ample support for the BAA's conclusion that TAA was authorized to file a protest of the 1990 tax on Southwest's behalf.

■ For this reason, we also reject Taxpayer's contention that the previous protest should not bar it from obtaining abatement because the notice of determination was sent to TAA rather than to Southwest, which was the owner and taxpayer at the time. While § 39–10–114(1)(A)(I)(D) bars a petition for abatement only in those situations in which the determination of the prior protest "has been mailed to the taxpayer," here there was sufficient evidence to support BAA's finding that TAA was acting as agent for Southwest. Thus, TAA was authorized to receive the notice on behalf of Southwest.

## II.

Taxpayer also contends that under 12 U.S.C. § 1825(b)(1) (1989), a provision of the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), the limitation contained in § 39–10–114(1)(a)(I)(D) is not applicable to RTC or to Taxpayer as RTC's assignee. We also disagree as to this contention.

12 U.S.C. § 1825(b)(1) (1989) provides in pertinent part that:

The [Federal Deposit Insurance] Corporation ... shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal or local taxation to the same extent according to its value as other real property is taxed, except that, *notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.* (emphasis added)

Taxpayer contends that the emphasized language of § 1825(b)(1) has the effect of preempting the limitations contained in § 39–10–114(1)(a)(I)(D) as to abatement petitions based on alleged overvaluation in situations in which a valuation protest has previously been denied. We disagree.

Although § 1825(b)(1) refers to the Federal Deposit Insurance Corporation rather than RTC, its terms are made applicable to RTC under 12 U.S.C. § 1441(b)(4) (1995 Cum. Supp.). *See also Birdville Independent School District v. Hurst Associates,* 806 F.Supp. 122 (N.D.Tex.1992).

■ Section 1825(b)(1) permits RTC to challenge an assessment even if other parties have previously failed to do so. However, there is nothing in the language of the provision that would allow the RTC to *re-challenge* an assessment after a previous owner had already unsuccessfully prosecuted a protest to final determination as to the same property and for the same tax year.

*F.D.I.C. v. Lowery,* 12 F.3d 995 (10th Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct.

2674, 129 L.Ed.2d. 809 (1994) does not compel a different result. There, local authorities attempted to collect ad valorem taxes assessed against property acquired by the Federal Deposit Insurance Corporation. The taxes covered a period of several years during which the property owners had neither paid taxes nor challenged the assessed value of the property.

In response to the county's threats to sell the property to satisfy the tax debt, the FDIC invoked the provisions of 12 U.S.C. 1825(b)(1).

With respect to the FDIC's challenge to the valuation in *Lowery,* the sole issue was whether the statutory exception applied only to assessments for tax years in which the FDIC owned the property. The United States Court of Appeals for the Tenth Circuit held that the FDIC was "permitted to challenge assessments made before its acquisition of title." *F.D.I.C. v. Lowery, supra,* 12 F.3d at 997. The court's opinion does not suggest, however, that the FDIC or RTC or their successors would be permitted to re-challenge an assessment already finally determined in a previous protest proceeding.

In view of our holding, we need not address the contention of the Administrator that Taxpayer, as a private-party assignee of the RTC's tax claims, lacked standing to invoke the provisions of 12 U.S.C. § 1825(b)(1).

The order of the BAA is affirmed.

DAVIDSON and ROTHENBERG, JJ., concur.