BOULDER COUNTRY CLUB,
Petitioner–Appellant,

v.

BOULDER COUNTY BOARD
OF COMMISSIONERS,
Respondent–Appellee,

and

Colorado State Board of Assessment
Appeals, Appellee.

No. 02CA0837.

Colorado Court of Appeals,
Div. V.

April 24, 2003.

Rehearing Denied Aug. 14, 2003.

Certiorari Denied Aug. 16, 2004.*

* Chief Justice MULLARKEY would grant as to the following issues:

Whether "erroneous valuation for assessment" as used in section 39-10-114(1)(a)(I)(A), 11 C.R.S. (2003), refers to a claim requiring a legal determination, and whether "overvaluation" as used in section 39-10-114(1)(a)(I)(A), (D), refers to a claim requiring a factual determination. Whether the Court of Appeals erred in concluding that the Boulder Country Club's petition for abatement or refund of taxes was based upon an "erroneous valuation" for assessment rather than an "overvaluation."

William A. McLain, P.C., William A. McLain, Denver, Colorado, for Petitioner–Appellant.

H. Lawrence Hoyt, County Attorney, Robert R. Gunning, Assistant County Attorney, Boulder, Colorado, for Respondent–Appellee.

No Appearance for Appellee.

Opinion by Judge TAUBMAN.

In this property tax case, Boulder Country Club (taxpayer), appeals from an order of the Board of Assessment Appeals (BAA) denying taxpayer's abatement and refund petition. We reverse and remand.

The facts are not disputed. The taxpayer's property is used as a golf course country club. This appeal involves the tax years 1999 and 2000. The property's stipulated actual value for the tax year 1999 was $5,700,000. In tax year 2000, the Boulder County Assessor set the actual value of the property at $7,433,900.

Taxpayer filed a protest with the assessor and sought adjustment for the tax year 2000 property valuation. After the assessor denied its protest, taxpayer appealed to the Boulder County Board of Equalization (BCBOE). BCBOE denied taxpayer's appeal and mailed notices of denial to taxpayer in August 2000. Taxpayer received these notices, but did not appeal further.

In August 2001, taxpayer filed a petition for abatement and refund regarding the property's 2000 valuation. The parties stipulated that there was no change in the property between 1999 and 2000 that would affect its actual value. After a hearing, the BAA denied taxpayer's petition. The BAA concluded that taxpayer's petition fell within a statutory provision that prohibits an abatement or refund of taxes based on overvaluation if the taxpayer has already protested the valuation for the same tax year and received a written notice of determination. This appeal followed.

On appeal, taxpayer contends the BAA erred in denying its petition for abatement. Specifically, taxpayer argues that the abatement petition was based on "erroneous valuation for assessment," not on "overvaluation,"

so that the statutory prohibition is inapplicable. We agree.

◼ Appellate courts review interpretations of statutes de novo. *Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 361 (Colo. 2003).

◼ When construing statutes, a court's primary purpose is to effectuate the intent of the General Assembly. To determine intent, courts first look to the statutory language, giving words and phrases their commonly accepted meaning. *Archibold v. Pub. Utils. Comm'n*, 58 P.3d 1031, 1038 (Colo.2002). In addition, courts should give effect to every word where possible and not presume the General Assembly used language idly. *Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd.*, 919 P.2d 212, 219 (Colo.1996).

◼ However, courts will not follow a statutory construction that leads to an absurd result. *Lamb v. GEICO Gen. Ins. Co.*, 77 P.3d 748, 2002 WL 31477984 (Colo.App. No. 01CA2544, Nov. 7, 2002).

All real and personal property is appraised and valued for property tax purposes by the county assessor using a reassessment cycle consisting of two full calendar years. Sections 39–1–103(5)(a), 39–1–104(10.2)(a), C.R.S.2002. However, an assessor may increase or decrease a property's actual value in an intervening year for "any unusual conditions," which are specifically defined. Section 39–1–104(11)(b)(I), C.R.S.2002; *see also 24, Inc. v. Bd. of Equalization*, 800 P.2d 1366 (Colo.App.1990).

◼ The valuation of a taxpayer's property for both years in the reassessment cycle should be the same, absent statutory exceptions. *Cherry Hills Country Club v. Bd. of County Comm'rs*, 832 P.2d 1105, 1109 (Colo. App.1992).

◼ To contest the tax assessed on real property, a taxpayer may either file a protest and adjustment pursuant to § 39–5–122, C.R.S.2002, or initiate an abatement and refund procedure under § 39–10–114, C.R.S. 2002. *Prop. Tax Adm'r v. Prod. Geophysical Servs., Inc.*, 860 P.2d 514, 519 (Colo.1993). The protest and adjustment procedure and

abatement and refund procedure are separate and independent mechanisms for determining property tax disputes and are governed by different statutes. *Huerfano County Bd. of County Comm'rs v. Atl. Richfield Co.*, 976 P.2d 893, 896 (Colo.App.1999).

On the one hand, taxpayer argues that *Cherry Hills Country Club, supra*, 832 P.2d at 1109, governs our analysis. However, we conclude *Cherry Hills* is not determinative of the issue before us. In *Cherry Hills*, the property was valued at $9,400,000 for the tax year 1989 and $6,500,000 for 1990. There, the taxpayer sought to reduce the property valuation for 1989 to the 1990 amount. A division of this court concluded that the valuation of the taxpayer's land for the 1989 tax year should be reduced to the 1990 valuation because the board of equalization in fact revalued the property at $6,500,000 for 1990.

In contrast, here, there were no adjustments made to the property's valuation for the intervening year in 2000. Specifically, the parties agree that there were no changes to the property between 1999 and 2000 that would affect its value.

On the other hand, the county argues that *Yale Investments, Inc. v. Property Tax Administrator*, 897 P.2d 890 (Colo.App.1995), determines the outcome in this case. We also disagree with the county.

In *Yale*, a division of this court rejected a taxpayer's argument that an abatement petition was based on an illegal tax or erroneous valuation rather than an overvaluation. There, the taxpayer's property was valued at $1,200,000 for the tax years 1989 and 1990. The taxpayer's predecessor filed an abatement petition for both tax years based on overvaluation. The abatement petition was granted for tax year 1989, but not for tax year 1990.

On appeal, the taxpayer argued that the 1990 taxes were illegal or erroneous because the abatement petition for the tax year 1989 had been granted. The *Yale* division concluded that an abatement for the tax year 1989 did not render the 1990 tax illegal or erroneous because the 1990 abatement petition was specifically based on overvaluation. The division held that the 1990 abatement petition was statutorily barred because the taxpayer had previously filed a protest and adjustment appeal based on an overvaluation. *See* § 39–10–114(1)(a)(I)(D), C.R.S.2002 (this addition to the statute became effective in 1990).

In contrast, here, the abatement petition is not based on overvaluation, but on an erroneous valuation for assessment. Therefore, *Yale* is not determinative of the outcome.

Taxpayer also relies on *Board of Assessment Appeals v. Benbrook*, 735 P.2d 860 (Colo.1987), to support its position that its petition for abatement is based upon "erroneous valuation for assessment" and not on "overvaluation." There, a residential building was converted from apartments to condominiums in 1979, an intervening year. The assessor considered the conversion a change in the use of the land and increased the property's valuation. Based on a former version of § 39–10–114, the supreme court concluded that the tax increase was partially illegal and held that "[t]here is no need to characterize the tax paid as wholly illegal before the taxpayer may obtain abatement and refund." *Bd. of Assessment Appeals v. Benbrook, supra*, 735 P.2d at 869.

In a footnote, the *Benbrook* court noted that the taxpayers may have been entitled to seek relief under the abatement and refund procedure without first filing a protest seeking adjustment because "they could argue that their taxes were levied erroneously or illegally due to erroneous valuation for assessment because the assessor changed the valuation for assessment in a nonbase year." *Bd. of Assessment Appeals v. Benbrook, supra*, 735 P.2d at 869 n. 16.

Taxpayer argues that because *Benbrook* was decided before "overvaluation" was included as a basis for abatement and refund, the court's discussion of "erroneous valuation for assessment" could not have been referring to "overvaluation."

The county, however, argues that *Benbrook* is distinguishable from the present case because the assessor here did not increase the value of the property for the intervening year. Instead, the assessor valued the property at $7,433,900 for both tax

years 1999 and 2000. The parties entered into a stipulation to reduce the property's value for 1999, and this value reduction did not render the 2000 valuation erroneous.

We reject the county's contention, based on *Benbrook*, that the term "erroneous valuation for assessment" applies only to actions by the assessor. The abatement and refund statute is not so limited. *See* § 39–10–114(1)(a)(I)(A), C.R.S.2002.

Accordingly, we engage in a statutory analysis and conclude that taxpayer's position is correct.

A petition for abatement and refund of real property taxes is governed by § 39–10–114(1)(a)(I), C.R.S.2002, which provides in pertinent part:

> (A) Except as otherwise provided ... if taxes have been levied erroneously or illegally, whether due to *erroneous valuation for assessment*, irregularity in levying, clerical error, or *overvaluation*, the treasurer shall report the amount thereof to the board of county commissioners, which shall proceed to abate such taxes in the manner provided by law.
>
> . . . .
>
> (D) No abatement or refund of taxes shall be made based upon the ground of *overvaluation* of property if an objection or protest to such valuation has been made and a notice of determination has been mailed to the taxpayer. . . .

(Emphasis added.)

Here, taxpayer concedes that it previously filed a protest and adjustment for the tax year 2000. Nevertheless, taxpayer argues that the prohibition in § 39–10–114(1)(a)(I)(D) does not apply because the abatement petition was based on an "erroneous valuation for assessment" rather than "overvaluation." We agree. Specifically, the abatement petition provides:

> The p[ur]pose of the abatement petition is to conform the 2000 value of the subject property to the 1999 value which was established by stipulation dated Jan. 18, 2001. A copy of the 1999 stipulation is attached. The 2000 value is an *erroneous valuation for assessment* pursuant to the

Colorado Court of Appeals decision in *Cherry Hills Country Club* [*supra*].

(Emphasis added.)

We agree with the county that the language a taxpayer uses in an abatement petition is not determinative. *See Wyler/Pebble Creek Ranch v. Colo. Bd. of Assessment Appeals*, 883 P.2d 597, 600 (Colo.App.1994)(finding challenge to a reclassification of property was an overvaluation challenge rather than an appeal of an erroneous or illegal levy as the taxpayer asserted). Therefore, we consider the substance of taxpayer's argument, and we conclude that taxpayer properly characterized its abatement petition as based on an "erroneous valuation for assessment."

The phrase "erroneous valuation for assessment" as used in the current § 39–10–114(1)(a)(I)(A) has not been interpreted by a Colorado appellate court. *Cf. Bd. of Assessment Appeals v. Benbrook, supra* (overruling decision that phrase "erroneous assessment" as used in former § 39–10–114 meant "more than mere over-assessment and referred to a tax levy that for any reason is wholly illegal or invalid"); *see also Gates Rubber Co. v. State Bd. of Equalization*, 770 P.2d 1189 (Colo.1989).

In *Wyler/Pebble Creek Ranch, supra*, 883 P.2d at 600, a division of this court concluded that if the reclassification of property is "totally dependent upon a factual determination, i.e., the actual use of the property at the time the taxes are levied," the reclassification involves an issue of overvaluation. There, the taxpayer's property was reclassified from agricultural to residential property. The taxpayer argued that the property continued to be used as agricultural property, despite its reclassification.

■ Here, in contrast, whether taxpayer is entitled to an abatement does not involve a factual determination. Taxpayer's abatement petition asserts that, as a matter of law, absent unusual conditions that are not at issue here, the assessments for 1999 and 2000 must be the same. Thus, its argument requires a legal, rather than a factual, determination. Therefore, we conclude the petition is based on an "erroneous valuation for assessment." *See Wyler/Pebble Creek Ranch*

*v. Colo. Bd. of Assessment Appeals, supra,* 883 P.2d at 600.

To conclude that a taxpayer's request to change the valuation of his or her property under the abatement procedure is always based on an overvaluation would encompass all abatement petitions and render the remaining bases for abatement petitions in § 39–1–114(1)(a)(I)(A) meaningless. *See Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd., supra.*

Because we must read statutes as a whole and give each part of a statute consistent and harmonious effect, *Pediatric Neurosurgery, P.C. v. Russell,* 44 P.3d 1063, 1068 (Colo. 2002), we reject the county's argument that "overvaluation" as used in § 39–10–114(1)(a)(I)(A) is different from "overvaluation" as used in § 39–10–114(1)(a)(I)(D).

Accordingly, we conclude that taxpayer's petition for abatement and refund is not precluded by § 39–10–114(1)(a)(I)(D) because it is based upon an erroneous valuation for assessment—a legal issue—rather than overvaluation—a factual issue. Thus, "erroneous valuation for assessment" as used in § 39–10–114(1)(a)(I)(A) refers to a legal issue. In contrast, "overvaluation" as used in § 39–10–114(1)(a)(I)(A) and (D) refers to a factual issue.

The order is reversed, and the case is remanded for proceedings consistent with this opinion.

Judge CASEBOLT and Judge NIETO concur.