**5050 S. BROADWAY CORPORATION; Florian F. Barth; Belokes Ltd. Partnership; J. William Crouch; Irving Pasternak; William J. Crouch; Stanley and Georgia Frances Lee; Joseph H. and Sherry L. McSoud; Alex P. and Wilda E. Melewski; Margaret Pasternak; Resilient Floor Covering Pension Fund; Myer J. Schaffner; Emily B. Tucker; Jack E. Wagenblast; and Wilma E. Wagenblast, Petitioners–Appellants,**

**v.**

**ARAPAHOE COUNTY BOARD OF COMMISSIONERS and Board of Assessment Appeals, State of Colorado, Respondents–Appellees.**

**No. 90CA0166.**

Colorado Court of Appeals,
Div. II.

Feb. 7, 1991.

As Amended June 11, 1991.

Rehearing Denied March 14, 1991.

Certiorari Granted Aug. 19, 1991.

McKenna, Conner & Cuneo, Terry L. Cook, Denver, for petitioners-appellants.

Peter Lawrence Vana III, Arapahoe County Atty., Nancy Berk, Asst. County Atty., Littleton, Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Thomas D. Fears, Asst. Atty. Gen., Denver, for respondents-appellees.

Opinion by Judge DUBOFSKY.

Petitioners appeal from an order of the Board of Assessment Appeals (BAA) which affirmed the denial of their petition for abatement of property taxes for 1988 tax assessments. We affirm.

Petitioners own property located along South Broadway in Arapahoe County, Colorado. The county assessor mailed notices

of increased valuation to petitioners in a timely manner in 1988. Petitioners failed to protest valuations with the Arapahoe County Assessor during the allotted time period under § 39-5-122, C.R.S. (1982 Repl. Vol. 16B).

On January 24, 1989, petitioners filed abatement petitions with the Board of County Commissioners (County Board) under § 39-10-114, C.R.S. (1990 Cum.Supp.). The County Board denied the abatement petitions and concluded that since petitioners were alleging errors in valuations that the petitioners did not meet the abatement requirements of § 39-10-114.

Petitioners then appealed the County Board's decision to the BAA, and the BAA allowed the petitioners to proceed on both overvaluation and clerical error claims. The BAA affirmed the decision of the County Board and concluded that the petitions involved valuations which had to be contested under the protest procedure of § 39-5-122, not the abatement procedure of § 39-10-114.

I.

The BAA now argues that it did not have subject matter jurisdiction to hear petitioners' appeal from the County Board ruling and that the district court, under C.R.C.P. 106(a)(4), was the proper forum for the appeal from the County Board. Although the BAA raises this argument for the first time on appeal, since it involves an issue of subject matter jurisdiction of an administrative body, we address it as a threshold matter. *See Industrial Commission v. Plains Utility Co.*, 127 Colo. 506, 259 P.2d 282 (1953); *In re Death of Peterkin*, 698 P.2d 1353 (Colo.App.1985). We would point out, however, that it is not good practice for an administrative body to accept jurisdiction over a matter and then, on appeal, challenge its decision to do so. *Industrial Commission v. Plains Utility Co., supra.*

In its jurisdictional attack, the BAA relies on § 39-10-114.5, C.R.S. (1990 Cum. Supp.), which grants jurisdiction to the BAA to determine appeals from the board of county commissioners or the property tax administrator when a claim for refund or abatement of taxes is denied. The BAA argues § 39-10-114.5 created for taxpayers a right of appeal to the BAA which did not previously exist. We disagree.

Here, § 39-2-125, C.R.S. (1982 Repl.Vol. 16B) delineates the duties of the BAA and specifically indicates that the BAA "shall perform the following" including:

> "*Hear appeals* from decisions of boards of county commissioners filed not later than thirty days after the entry of any such decision when a claim for refund or abatement of taxes is denied in full or in part.".

Section 39-2-125(1)(f), C.R.S. (1982 Repl. Vol. 16B). (emphasis added)

This language plainly states that the BAA has a mandatory duty to hear appeals from a board of county commissioners when there has been a denial or an abatement of taxes. *See Williams Natural Gas Co. v. Mesa Operating Limited Partnership*, 778 P.2d 309 (Colo.App.1989). Recent case law also supports this interpretation. *Gunnison County v. Board of Assessment Appeals*, 693 P.2d 400 (Colo.App. 1984); *Schmidt-Tiago Construction Co. v. Property Tax Administrator*, 687 P.2d 528 (Colo.App.1984); *Capital Associates International, Inc. v. Arapahoe County Board of Commissioners*, 802 P.2d 1180 (Colo. App.1990).

The BAA, however, argues that until § 39-10-114.5 was passed, the petitioners' only authorized appeal was through C.R.C.P. 106(a)(4). The BAA implicitly argues that, although § 39-2-125 permits the BAA to hear appeals from the County Board, it did not authorize the petitioners to take such an appeal. We reject this strained interpretation as it would cause an unreasonable result. *See* § 2-4-201, C.R.S. (1980 Repl.Vol. 1B).

A statute is to be read according to its plain meaning. *Kern v. Gebhardt*, 746 P.2d 1340 (Colo.1987). The mandatory language which requires the BAA to hear appeals from the County Board's denial of an abatement must necessarily be based on

a concurrent right of the taxpayer to appeal such denial to the BAA.

We thus conclude that the plain language of § 39-2-125(1)(f) grants the BAA jurisdiction to hear petitioners' appeal from the County Board.

II.

Petitioners argue that the BAA erred in denying their petitions for abatement, under § 39-10-114, to correct errors in valuation of taxable property. Because the proper procedure to contest the type of claims involved here is under § 39-5-122, the BAA argues it correctly refused to hear taxpayers' petition under § 39-10-114.

Section 39-10-114(1)(a)(I)(A), C.R.S. (1990 Cum.Supp.) states in pertinent part:

"If taxes have been levied erroneously or illegally, *whether due to erroneous valuation* for assessment, irregularity in levying, or clerical error, the treasurer shall report the amount thereof to the board of county commissioners, which shall proceed to abate such taxes in the manner provided by law. If such taxes have been collected by the treasurer, the board of county commissioners shall authorize refund of the same in the manner provided by law. However, except as otherwise provided in this sub-subparagraph (A), in no case shall an abatement or refund of taxes be made more than six years after the taxes were due. No abatement or refund of taxes based upon the ground of *errors in valuation* shall be made for taxes levied prior to January 1, 1988; except that this provision shall not apply to any valuation which is the subject of an appeal made pursuant to section 39-8-108 which, on May 23, 1988, is pending or upon which a final order or judgment has been issued. On or after January 1, 1990, in no case shall an abatement or refund of taxes be made unless a petition for abatement or refund is filed within one year of the date upon which the taxes were due or within one year of the issuance of a final order or judgment in an appeal filed pursuant to section 39-8-108, whichever is later." (emphasis added)

The last two sentences of this statutory section were added in 1988. *See* Colo.Sess. Laws 1988, ch. 268, § 39-10-114(1)(a)(I)(A) at 1290.

The BAA argues the 1988 addition to the language of § 39-10-114 simply changed the statute of limitations and, therefore, the case law explaining and interpreting § 39-10-114 is still applicable. It argues the two statutes, § 39-5-122 and § 39-10-114, are not interchangeable, both because the wording is different and their terms have been interpreted differently. *See Gates Rubber Co. v. State Board of Equalization,* 770 P.2d 1189 (Colo.1989). We agree.

The General Assembly is presumed to be aware of the judicial interpretations of a statute that it amends. *See Rauschenberger v. Radetsky,* 745 P.2d 640 (Colo.1987). It is presumed that an amendment does not change existing law further than is expressly declared or necessarily implied. 1A N. Singer, *Sutherland Statutory Construction* § 22.30 (4th ed. 1985). Since the plain language of the amended § 39-10-114 expresses an intent to restrict the statute of limitations as to abatement errors in assessment, it does not enlarge the prior basis for an appeal under the abatement statute.

On the other hand, petitioners argue that the use of the term "errors in valuation" in the amended § 39-10-114 essentially obliterates any distinction between § 39-10-114 and § 39-5-122 in overvaluation cases and now permits taxpayers to proceed under § 39-10-114 in virtually all overvaluation cases. We disagree.

Other than using the phrase "errors in valuation," the 1988 amendment did not otherwise alter or delete the statutory language, which was the same as that of the prior abatement statute that has been the subject of court decisions since 1902. *See Gates Rubber Co. v. Board of Equalization, supra.* In our view, a more definitive statutory clarification was necessary for the General Assembly to effectuate a change in the property tax scheme that

would allow an abatement action for essentially all errors in valuation. We, therefore, conclude that the plain language of § 39-10-114 expresses an intent merely to restrict the statute of limitations as to abatement claims. It does not change or enlarge a taxpayer's basis to seek abatement if an assessed tax is based on an overvaluation.

III.

Petitioners next argue that even if the 1988 amendment to § 39-10-114 did not broaden their right to contest overvaluation, our supreme court's decision in *Board of Assessment Appeals v. Benbrook,* 735 P.2d 860 (Colo.1987) allows them to contest this overvaluation through the abatement procedure. We disagree.

In *B.A. Leasing Corp. v. State Board of Equalization,* 745 P.2d 254 (Colo.App. 1987), this court indicated that *Benbrook* had significantly altered the former distinctions between the protest and abatement statutes. Here, however, we more narrowly interpret the impact of *Benbrook* on the distinctions between the protest and abatement statutes.

We find support for this analysis in *Gates Rubber Co. v. Board of Equalization, supra.* In *Gates* the supreme court indicated that *Benbrook* could be understood as arising in a narrow factual and legal circumstance and that it did not fundamentally alter the existing distinctions between the protest and abatement statutes. *See Gates Rubber Co. v. Board of Equalization, supra* (fn. 8). Furthermore, in *Gates,* the court determined that *Benbrook* had clarified the implicit rulings in earlier cases, *i.e., Modular Communities, Inc. v. McKnight,* 191 Colo. 101, 550 P.2d 866 (1976) and *Lamm v. Barber,* 192 Colo. 511, 565 P.2d 538 (1977), that a taxpayer need not characterize the entire tax as illegal before proceeding under the abatement statute.

*Benbrook* concerned a tax abatement appeal of the assessment of condominiums which had been apartments. The taxpayers in *Benbrook* challenged the interpretation and application of the law which changed their tax classification because of the change from apartments to condominiums. In that situation, the court agreed with the taxpayers and held that, when a similarly situated taxpayer has already protested illegal valuation under § 39-5-122, the taxpayer can contest the tax, through the abatement proceeding, if it was partially illegal. The tax at issue there was partially illegal because it involved an erroneous interpretation and application of the law and only affected part of the tax. *See Gates Rubber Co. v. Board of Equalization, supra.*

Here, there were other taxpayers, including Silver Oak Associates (one property used as a comparable by the assessor in evaluating taxpayers' properties), who successfully protested their valuations under § 39-5-122. Petitioners argue that this circumstance brings them under the *Benbrook* rule and allows them to proceed under the abatement statute.

Here, however, the underlying basis of the petitioner's appeal is quite different than the one in *Benbrook.* Petitioners are not appealing a determination that was partially illegal because of a misinterpretation of the law classifying the property. Rather, they have appealed from an alleged improper evaluation and use of "comparable properties" to determine their tax. Hence, we conclude that the BAA correctly determined that petitioners' claims did not fit within the *Benbrook* rule allowing use of the abatement procedure. *See Gates Rubber Co. v. Board of Equalization, supra.*

IV.

Petitioners final argument is that the failure of the Arapahoe County Assessor to use appropriate "comparables" to value their property was a clerical error. The BAA asserts that its ruling that the alleged error was one of overvaluation necessarily rejects taxpayers' assertion that this is a clerical error. We agree with the BAA.

We note that if a clerical error had occurred, taxpayers could have appealed to the BAA under § 39-10-114 and applicable

case law. *See Coquina Oil Corp. v. Larimer County Board of Equalization,* 770 P.2d 1196 (Colo.1989); *Amoco Production Co. v. Board of Assessment Appeals,* 770 P.2d 1207 (Colo.1989); *Aurora Plaza & Conference Center, Ltd. v. Board of Assessment Appeals,* 770 P.2d 1204 (Colo. 1989).

Although the term "clerical error" is not defined in § 39-10-114, it has been analyzed in case decisions. Clerical errors include transcription mistakes, *see Bessemer Irrigating Co. v. West Pueblo Ditch & Reservoir Co.,* 65 Colo. 258, 176 P. 302 (1918), as well as errors of law, mistakes appearing on the face of a record, and other defects or omissions in the record. *Coquina Oil Corp. v. Larimer County Board of Equalization, supra.*

Here, evidence was presented by petitioners to the BAA as to both errors in valuation and "clerical errors." Petitioners' witness testified that the county assessor made a clerical error when he used inaccurate comparables in valuing their properties. In our view, the term "clerical error" under § 39-10-114 does not encompass mistakes of assessors who make factual errors in valuating property. We thus agree with the BAA's implicit conclusion that the clerical error concept is inapplicable here.

The evidence here demonstrated that the proper valuation to be ascribed to the comparable properties reflected a disagreement between the experts. For example, petitioners alleged that the assessor erred because he did not determine whether a piece of comparable property was improved or unimproved and whether other comparables were outside the relevant area. The Arapahoe County assessor testified that the comparables used were accurately evaluated and properly included.

If taxpayers' broad definition of the term "clerical error" was adopted, it would permit attack on overvaluation whenever a taxpayer could prove a "comparable property" had not been properly evaluated when another taxpayer had been successful on that basis under the protest statute. Since many challenges to overvaluation involve claims that comparable properties used by the assessor were themselves improperly evaluated, the distinction between the protest and abatement statutes would be largely obliterated. We do not read *Benbrook* as indicating that result.

The record indicates that the BAA implicitly found no "clerical error" under § 39-10-114 because the petitioners' claims were based on factual and expert opinion disputes in regard to the valuation of comparable properties. Since the BAA's determination is supported by the record, it will not disturbed on appeal.

Order affirmed.

SMITH and ROTHENBERG, JJ., concur.