Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 13, 2017

**2017 CO 104**

**No. 16SC51, OXY USA Inc. v. Mesa County Board of Commissioners—Taxation—Abatement—Overvaluation**

The supreme court holds that section 39-10-114(1)(a)(I)(A), C.R.S. (2017), allows abatement and refund for illegally or erroneously levied taxes based on overvaluation caused by taxpayer error. This result follows from the statute's plain text that allows abatement for "overvaluation" without making a distinction between government- and taxpayer-caused overvaluations. The court rejects the court of appeals' holding that Coquina Oil Corp. v. Larimer County Board of Equalization, 770 P.2d 1196 (Colo. 1989), and Boulder County Board of Commissioners v. HealthSouth Corp., 246 P.3d 948 (Colo. 2011), require a different result. Coquina was superseded by the 1991 legislative amendment that added "overvaluation" as a ground for abatement, and HealthSouth's holding was limited to intentional taxpayer overvaluations. The supreme court reverses the judgment of the court of appeals and remands for further proceedings.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2017 CO 104

**Supreme Court Case No. 16SC51**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1914

**Petitioner:**

OXY USA Inc.,

v.

**Respondent:**

Mesa County Board of Commissioners.

**Judgment Reversed**
*en banc*
November 13, 2017

**Attorneys for Petitioner:**
The Poe Law Office LLC
Alan Poe
Rachel Poe
  *Centennial, Colorado*

Holland & Hart LLP
Christina Gomez
  *Denver, Colorado*

**Attorneys for Respondent:**
Dufford, Waldeck, Milburn & Krohn, LLP
Nathan A. Keever
  *Grand Junction, Colorado*

**Attorneys for Amici Curiae Plateau Valley School District 50, Plateau Valley Fire District, and Plateau Valley Hospital District:**
Ireland Stapleton Pryor & Pascoe, PC
Jeffrey S. Hurd
  *Grand Junction, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1　In 2011, OXY USA Inc. ("Oxy"), made a mistake that caused it to overpay its property taxes on oil and gas produced from leaseholds in Mesa County. Oxy failed to deduct certain costs it was entitled to deduct. By the time it realized the mistake, the protest period had expired. The company nonetheless contends it is entitled to abatement and refund of the overpayment pursuant to section 39-10-114(1)(a)(I)(A), C.R.S. (2017). But the county board of commissioners maintains that the abatement-and-refund provision does not apply here because Oxy was the sole source of the error.

¶2　Section 39-10-114(1)(a)(I)(A) requires, with some exceptions inapplicable here, a county board of commissioners to abate and refund property taxes that have been "levied erroneously or illegally, whether due to erroneous valuation for assessment, irregularity in levying, clerical error, or overvaluation." Relying on our precedent, the court of appeals held that Oxy can't receive abatement and refund for overpayment due to its own mistake. The question for us is whether that precedent controls here. We conclude it does not.

¶3　We hold that section 39-10-114(1)(a)(I)(A) gives taxpayers the right to seek abatement and refund for erroneously or illegally levied taxes resulting from overvaluation caused solely by taxpayer mistake. We therefore conclude that Oxy is entitled to abatement and refund for its overpayment of taxes in the tax year at issue here. Accordingly, we reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶4 Oxy operates oil and gas leaseholds in Mesa County, Colorado. Colorado oil and gas deposits are treated as estates in real property. Clevinger v. Cont'l Oil Co., 369 P.2d 550, 551 (Colo. 1962). The owners often lease these estates to companies with the resources to develop them. Oxy is one such company.

¶5 Like all other oil and gas leasehold operators in Colorado, Oxy is required by statute to file an annual statement containing information about the amount of oil or gas sold or transported from each of its wellheads, as well as the selling price of oil or gas at the wellhead. § 39-7-101(1)(c), (d), C.R.S. (2017). The statute defines "selling price at the wellhead" as the net taxable revenue realized by the taxpayer for the sale of oil or gas. § 39-7-101(1)(d). Net taxable revenue is equal to gross lease revenue minus deductions for costs incurred in gathering, transporting, manufacturing, and processing the oil or gas. Id. The operator's annual statement is used by the county assessor to value the operator's leasehold for property tax assessment. § 39-7-102(1), C.R.S. (2017). Leaseholds are valued at an amount equal to 87.5% of the "selling price of the oil or gas sold from each wellhead." Id.

¶6 After filing its operator statement in 2012, Oxy discovered that it had failed to deduct certain allowable costs when preparing its statements for tax years 2011 and 2012. Without those deductions, Oxy over-reported the selling price of its gas at the wellhead for those years. This led Oxy to overvalue its leasehold and thereby overpay its taxes. This is undisputed.

¶7    When Oxy discovered its error, it filed revised operator statements and petitioned for abatement under section 39-10-114(1)(a)(I)(A), which allows the abatement and refund of property taxes erroneously or illegally levied "due to erroneous valuation for assessment, irregularity in levying, clerical error, or overvaluation." Oxy sought abatement for tax years 2011 and 2012, but only the tax-year-2011 petition is at issue here.

¶8    The Mesa County Board of Commissioners ("County Board") denied Oxy's petition, ruling that it did not satisfy any of section 39-10-114(1)(a)(I)(A)'s enumerated grounds for abatement.

¶9    The Board of Assessment Appeals ("BAA") reversed the County Board. The BAA concluded that due to Oxy's error on its operator statement, the tax-year-2011 valuation of its property was incorrect. Accordingly, the BAA determined that Oxy was entitled to abatement and refund for that year.

¶10   The court of appeals reversed the BAA decision, concluding that because Oxy was at fault for the error in this case, Oxy could not seek abatement on any of the grounds listed in section 39-10-114(1)(a)(I)(A).

¶11   We granted Oxy's petition for a writ of certiorari.[1]

---

[1] We granted certiorari to consider the following issue:

Whether the court of appeals erred in holding that section 39-10-114(1)(a)(I)(A), C.R.S. (2015), which provides for abatements and refunds of property taxes that "have been levied erroneously or illegally, whether due to erroneous valuation for assessment, . . . clerical error, or overvaluation," does not apply to an overvaluation of oil and gas

4

## II.  Standard of Review

This case presents a question of statutory interpretation, which this court considers de novo.  Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp., 246 P.3d 948, 951 (Colo. 2011).

## III.  Analysis

Section 39-10-114(1)(a)(I)(A) requires the abatement and refund of property taxes levied erroneously or illegally due to "erroneous valuation for assessment, irregularity in levying, clerical error, or overvaluation."[2]

Oxy suggests that if it satisfies one of the listed grounds for abatement, it will necessarily have shown that any resulting excessive tax was "levied erroneously or illegally" for purposes of section 39-10-114.[3]  Because the County Board does not appear to dispute that point, we will assume, without deciding, that it is correct.

Oxy invokes three of the four grounds enumerated in the statute: erroneous valuation for assessment, clerical error, and overvaluation.  The court of appeals concluded, and the County Board argues here, that none of these grounds for

properties resulting from an inadvertent error in declaration schedules filed by the operator of the properties.

[2] In April 2017, the General Assembly made minor amendments to section 39-10-114(1)(a)(I)(A).  Ch. 148, sec. 1, § 39-10-114, 2017 Colo. Sess. Laws 494, 494–95. These amendments do not alter the grounds for abatement and refund, so we do not discuss them further.

[3] Oxy goes further, arguing that all excessive taxes based on erroneous valuation, even for reasons beyond those listed in the statute, are "levied erroneously or illegally" and subject to abatement and refund.  Because we conclude that Oxy meets the listed ground of "overvaluation," we do not reach this argument.

abatement applies because Oxy alone made the error leading to overpayment. Thus, we consider whether section 39-10-114(1)(a)(I)(A) permits abatement for an error caused solely by the taxpayer. Because we resolve this dispute based on overvaluation, we do not address Oxy's alternate arguments.

## A. Statutory Interpretation Standards

¶16    When construing a statute, our primary task is to ascertain and give effect to legislative intent. Prop. Tax Adm'r v. Prod. Geophysical Servs., Inc., 860 P.2d 514, 517 (Colo. 1993). We begin with the plain language of the statute, giving words and phrases their commonly accepted and understood meanings. Id. If the meaning of the statute is clear from the language alone, our analysis is complete, and we apply the statute as written. See Jefferson Cty. Bd. of Equalization v. Gerganoff, 241 P.3d 932, 935 (Colo. 2010). However, if the statute is ambiguous, we may employ aids to construction to help determine legislative intent. Id. For example, we may consider the object sought to be attained by the statute, the circumstances under which the statute was enacted, the legislative history, and the legislative declaration or purpose. § 2-4-203(1), C.R.S. (2017).

## B. The Plain Language Suggests Abatement Is Allowed for Any Overvaluation

¶17    The plain language of section 39-10-114(1)(a)(I)(A) suggests that abatement is allowed for any overvaluation, even when it is caused by taxpayer error. The statute authorizes abatement in cases of overvaluation, and it is silent as to whether the source of the error—be it the assessor or the taxpayer—should affect the availability of

abatement based on overvaluation. This silence suggests the source of the error does not matter.

¶18 Ordinarily, this would be the end of the analysis, but the court of appeals thought not. It held that our decisions in <u>Coquina Oil Corp. v. Larimer County Board of Equalization</u>, 770 P.2d 1196 (Colo. 1989), and <u>Boulder County Board of Commissioners v. HealthSouth Corp.</u>, 246 P.3d 948 (Colo. 2011), preclude abatement on overvaluation grounds when the overvaluation was due to taxpayer rather than assessor error. We conclude the division's reliance on these decisions was misplaced.

### C. <u>Coquina</u> Does Not Change the Plain Meaning of Overvaluation

¶19 We next address whether <u>Coquina</u>'s treatment of overvaluation affects the 1991 amendment that added "overvaluation" as a ground for abatement. First, we determine that the amendment superseded <u>Coquina</u>. Second, we observe that the amendment's history reflects legislative intent to take a broader view of overvaluation than did the <u>Coquina</u> court.

### 1. The 1991 Amendment Superseded <u>Coquina</u>'s Holding that Taxpayer-caused Overvaluation Could Not Be Abated

¶20 In <u>Coquina</u>, a taxpayer that had erroneously overvalued its leasehold sought abatement of taxes based on "clerical error" under an earlier version of the abatement statute that did not expressly address overvaluation. 770 P.2d at 1197, 1199. We considered the meaning of "clerical error," and we noted that the taxpayer had already had and missed one opportunity to correct its error under the protest statute. <u>Id.</u> at 1197, 1199–1201. In a 4–3 decision, we concluded "that the phrase 'clerical error' in

7

section 39-10-114(1)(a) does not encompass an error made by the taxpayer and relied upon by the tax authority." Id. at 1199. We perceived "no substantial injustice" in requiring a taxpayer to check for errors within the protest period after having received a notice of valuation. Id. at 1201.

¶21 However, two years after Coquina, the legislature amended the abatement statute to expressly address overvaluation, Ch. 309, sec. 3, § 39-10-114(1)(a)(I)(A), 1991 Colo. Sess. Laws 1962, 1963; it thereby superseded Coquina's treatment of overvaluation. As we explained above, the plain text of that amendment makes no distinction between taxpayer and assessor errors, and we see no reason to infer that the legislature intended to adopt Coquina's limitation against taxpayer errors.

¶22 Although we presume that the legislature operates with knowledge of our precedent, see Pierson v. Black Canyon Aggregates, Inc., 48 P.3d 1215, 1219 (Colo. 2002), we would stretch that principle too far to impute Coquina's limitation on an existing ground for abatement (clerical error) into the legislature's addition of a new ground for abatement (overvaluation), see People v. Swain, 959 P.2d 426, 430–31 (Colo. 1998) ("[T]he legislature is presumed, by virtue of its action in amending a previously construed statute without changing the portion that was construed, to have accepted and ratified the prior judicial construction." (emphasis added)).

¶23 And while the court of appeals noted that the heart of Coquina's rationale could extend beyond clerical error to all abatements, Coquina's holding did not extend that far, and we decline to extend it now.

8

¶24 Even were we to assume, without deciding, that <u>Coquina</u> somehow leaves the amended statute ambiguous, the legislative history suggests that a taxpayer may seek abatement based on overvaluation despite having caused the overvaluation itself. We review that history now.

## 2. Legislative History Indicates Intent to Confer Broad Relief from Overvaluation

¶25 The legislature added overvaluation as a ground for abatement in 1991 in response to the court of appeals' decision in <u>5050 S. Broadway Corp. v. Arapahoe County Board of Commissioners</u>, 815 P.2d 966 (Colo. App. 1991). In that case, petitioners sought relief from property-valuation increases, but they failed to timely challenge the new valuations through the protest procedure set forth in section 39-5-122, C.R.S. (2017). <u>5050 S. Broadway</u>, 815 P.2d at 968. That procedure allows a taxpayer to challenge a county assessor's valuation of property before taxes are levied based on the valuation. <u>See</u> § 39-5-122. Having missed the deadline for filing a protest, petitioners in <u>5050 S. Broadway</u> instead sought to use the abatement-and-refund procedure under section 39-10-114(1)(a)(I)(A), which becomes relevant after taxes are levied. 815 P.2d at 968. The county board and the BAA determined that petitioners were limited to the protest procedure only, and that section 39-10-114(1)(a)(I)(A) did not apply. <u>Id.</u>

¶26 On appeal, petitioners argued that section 39-10-114(1)(a)(I)(A) did apply, in part because the alleged error resulted from an overvaluation. <u>Id.</u> at 969. However, "overvaluation" was not yet one of the enumerated grounds for abatement. <u>See</u>

9

§ 39-10-114(1)(a)(I)(A), C.R.S. (1990). The statute listed only "erroneous valuation for assessment, irregularity in levying, or clerical error." 5050 S. Broadway, 815 P.2d at 969.

¶27 Nonetheless, petitioners argued that the General Assembly's 1988 amendment to the statute permitted abatement based on overvaluation. The 1988 amendment added the following sentence to section 39-10-114(1)(a)(I)(A):

> No abatement or refund of taxes based upon the ground of errors in valuation shall be made for taxes levied prior to January 1, 1988; except that this provision shall not apply to any valuation which is the subject of an appeal made pursuant to section 39-8-108 which, on the effective date of this sub-subparagraph (A), is pending or upon which a final order or judgment has been issued.

Ch. 268, sec. 24, § 39-10-114(1)(a)(I)(A), 1988 Colo. Sess. Laws 1276, 1290–91 (emphasis added). Petitioners asserted that the catchall phrase "errors in valuation" "essentially obliterate[d] any distinction between § 39-10-114 and § 39-5-122 in overvaluation cases and . . . permit[ted] taxpayers to proceed under § 39-10-114 in virtually all overvaluation cases." 5050 S. Broadway, 815 P.2d at 969.

¶28 The court of appeals disagreed. It noted that the 1988 amendment did not alter the statutory grounds for abatement and concluded that the amendment simply changed the statute of limitations for abatement claims. Id. at 970. The court stated: "In our view, a more definitive statutory clarification was necessary for the General Assembly to effectuate a change in the property tax scheme that would allow an abatement action for essentially all errors in valuation." Id. at 969–70.

¶29 The General Assembly quickly and directly responded to the court of appeals' invitation for further clarification. It passed Senate Bill 91-231, amending section

39-10-114(1)(a)(I)(A) to explicitly add overvaluation as a ground for abatement. Ch. 309, sec. 3, § 39-10-114(1)(a)(I)(A), 1991 Colo. Sess. Laws 1962, 1963.

¶30 The legislative declaration accompanying the 1991 amendment is particularly telling: The General Assembly explained that it was enacting the bill "with the intent of clarifying" that the court of appeals' statutory interpretation in 5050 S. Broadway was incorrect and that any taxpayer has "the right to petition for an abatement or refund of property taxes levied erroneously or illegally due to an overvaluation of such taxpayer's property." Ch. 309, sec. 1, 1991 Colo. Sess. Laws 1962, 1962.

¶31 The Senate debate before the passage of the bill confirms this intended meaning—senators explained that the changes were necessary in order to protect taxpayers from overpayment, noting that taxpayers often fail to realize they have overpaid taxes until the protest period has passed. Senate Floor Debate on Second Reading of Senate Bill 91-231, 58th Gen. Assemb., 1st Reg. Sess. (Colo. 1991). One senator called it "just not right" to take taxes for overvalued property in this fashion without affording taxpayers relief. Id.

¶32 Two aspects of this history demonstrate a broad legislative change that we construe as abrogating Coquina's taxpayer-error limitation. First, contrary to Coquina's rationale, the legislature considered the protest statute to be an insufficient remedy for overvaluations, at least in some circumstances. Second, although taxpayer error was not directly at issue in 5050 S. Broadway, the legislature's response indicated intent to confer broad relief to taxpayers who paid too much due to overvaluation.

¶33    The court of appeals also relied on our decision in HealthSouth as foreclosing abatement. We turn there now.

### D. HealthSouth Does Not Foreclose Abatement for Taxpayer-caused Overvaluation

¶34    In HealthSouth, the taxpayer, HealthSouth, filed personal-property declarations reporting fictitious assets. 246 P.3d at 950. HealthSouth paid taxes on the reported property it knew did not exist, and it later sought abatement and refund of those taxes. Id. at 949. This court concluded that HealthSouth was not entitled to pursue a refund under the circumstances. Id. at 950. We explained that the personal-property-tax framework relies upon truthful reporting by taxpayers, and therefore while HealthSouth's "intentional over-reporting . . . may have resulted in an overvaluation in the vernacular sense, [HealthSouth could] not claim a refund based on 'overvaluation' as that term is used in the current statutory framework." Id. at 954.

¶35    While we noted that assessor error may be the most likely cause of overvaluation, id. at 952, we did not preclude a taxpayer from seeking abatement for overvaluation due to inadvertent errors. True, we said that because the 1991 amendment was a direct response to 5050 S. Broadway, the legislature likely intended to address situations similar to the one in that case: "an overvaluation of personal or real property due to an overvaluation made by the most likely source of such an error — the assessor, not the taxpayer." Id. But we ultimately based our conclusion that overvaluation did not apply on the intentional nature of the taxpayer's error, and we even expressly contemplated that "overvaluation" was intended "to include mistaken

12

as opposed to intentional <u>overvaluation by taxpayers</u>."  <u>Id.</u> at 954 (emphases added).

Thus, <u>HealthSouth</u> does not support the court of appeals' holding here.

### III. Conclusion

¶36    We hold that section 39-10-114(1)(a)(I)(A) gives taxpayers the right to seek abatement and refund for erroneously or illegally levied taxes resulting from overvaluation caused solely by taxpayer mistake.  We therefore conclude that Oxy is entitled to abatement and refund for its overpayment of taxes in the tax year at issue here.  Accordingly, we reverse the judgment of the court of appeals and remand to that court for further proceedings consistent with this opinion.