The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 30, 2026

**2026COA34**

**No. 25CA0186, *Carroll Partners LLC v. Bd. of Comm'rs* —
Government — Local Government Regulation of Land Use —
Local Government Land Use Control Enabling Act of 1974 —
Impact Fees**

A division of the court of appeals considers the scope of a local

government's authority to impose impact fees on new development

under the Local Government Land Use Control Enabling Act of

1974 (the Act).  The division concludes that, under the Act, a local

government may impose impact fees as a condition of the issuance

of a development permit and that the imposition of said fees is not

limited to projects that develop a raw parcel of land or substantially

change the use of previously developed land.

Court of Appeals No. 25CA0186
Pitkin County District Court No. 22CV30071
Honorable Anne K. Norrdin, Judge

Carroll Partners LLC, a Colorado limited liability company,

Plaintiff-Appellant,

v.

The Board of Commissioners of Pitkin County, Colorado,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GROVE
Yun and Taubman*, JJ., concur

Announced April 30, 2026

Peck Feigenbaum, P.C., Daniel J. Sullivan, Heather J. Manolakas, Basalt,
Colorado, for Plaintiff-Appellant

Richard Y. Neiley III, County Attorney, Aspen, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Plaintiff, Carroll Partners LLC (Carroll), appeals the district court's summary judgment in favor of defendant, the Board of Commissioners of Pitkin County (Pitkin County).  We affirm.

## I.     Legal Framework

¶ 2     Under the Local Government Land Use Control Enabling Act of 1974 (the Act), local governments like Pitkin County are authorized to regulate the use of land within their respective jurisdictions based on "the impact of the use on the community or surrounding areas." §§ 29-20-101, -104(1)(g)(I), C.R.S. 2025.  One way local governments may exercise this authority is by charging fees to offset the projected impacts of development on certain categories of infrastructure.  *See* § 29-20-104.5(1), C.R.S. 2025 (the impact fee statute).  As relevant here, the impact fee statute provides that

> [p]ursuant to the authority granted in section 29-20-104(1)(g) and as a condition of issuance of a development permit, a local government may impose an impact fee or other similar development charge to fund expenditures by such local government on capital facilities needed to serve new development.

§ 29-20-104.5(1).

¶ 3     To ensure compliance with constitutional limitations, a local government that chooses to assess impact fees must do so pursuant to a schedule that is

> (a) [l]egislatively adopted;
>
> (b) [g]enerally applicable to a broad class of property; and
>
> (c) [i]ntended to defray the projected impacts on capital facilities caused by proposed development.

§ 29-20-104.5(1)(a)-(c).  Impact fees must be based on a quantification of "the reasonable impacts of proposed development on existing capital facilities."  § 29-20-104.5(2)(a).  And a government that chooses to impose such a fee on proposed development must not charge more than is "necessary to defray such impacts directly related to proposed development."  *Id.*

¶ 4     This case concerns an "employee housing impact fee" (EHIF) imposed by Pitkin County on certain construction projects under its land use code.  Pitkin County Land Use Code §§ 8-30-10 to -90 (July 2006).  As described in a 2020 Pitkin County ordinance, the EHIF is designed "to generate funds to offset demand for employee housing caused by employment generation from new development."  Pitkin

2

County, Colo., Ordinance No. 003-2020 (Feb. 12, 2020). The county uses the impact fees that it collects "to create additional dwelling units to be added to the employee housing inventory." *Id.* While the precise methodology for calculating the fee varies by project type, it is generally determined by multiplying the cost of housing for an employee for the duration of a particular project by the number of employees generated by that project. Pitkin County Land Use Code §§ 8-30-20 to -60.

¶ 5 Not all construction projects are subject to the EHIF. For example, the EHIF can generally be assessed only once for a certain piece of real estate — meaning that a project on a piece of land that has already been subject to an EHIF will, under some circumstances, be exempt from paying the fee. In addition, the land use code exempts "[s]tructures of [5,750] square feet or less" from the EHIF and provides further that impact fees will not apply to

certain remodels[1] or to the construction of "deed restricted employee housing." Pitkin County Land Use Code § 8-30-80(a)(1)-(3). And, as we discuss further below, because the impact fee statute links the authority to impose impact fees to the issuance of a "development permit," it does not empower local governments to impose such fees on many smaller projects — including those that might require only a building permit or even no permit at all.

## II. Factual and Procedural History

¶ 6      In October 2020, Carroll purchased a 6.5-acre lot in the Starwood Seven subdivision. Located on the lot was a 14,807-square-foot house built in 1983.

¶ 7      Carroll applied for a development permit to demolish the existing structure and replace it with a new single-family residence generally "within the same footprint." Pitkin County's development

---

[1]A "remodeling" project involves "the renovation of an existing structure that does not change: (a) the original size or location of the footprint of the structure; (b) the use of the structure; or (c) the floor area of the structure." Pitkin County Land Use Code § 11-10 (July 2006). In contrast, a "replacement" project completely removes "all or a portion of a structure and [substitutes] the original structure with a new structure" that may change the original size and location of the footprint of the structure. *Id.* It is undisputed that Carroll's project is a replacement and not a remodel.

4

office conditionally approved Carroll's application, characterizing it as a "replacement" of the existing structure and stating that Carroll would be required to "pay the applicable road and employee housing impact fees" at the building permit stage.

¶ 8    After Carroll applied for a building permit, the development office informed Carroll that it would need to pay an EHIF of $948,544.18 before the permit could be issued.  Carroll requested an exemption, but the request was denied.

¶ 9    Carroll appealed Pitkin County's decision to the district court. As relevant to this appeal, Carroll sought a declaratory judgment that Pitkin County could not assess an EHIF on the project and requested a permanent injunction prohibiting the county "from imposing the EHIF as a condition of issuing the [b]uilding [p]ermit."[2] While the lawsuit was pending, Pitkin County agreed to issue the building permit once Carroll placed the EHIF in escrow.  Carroll did

---

[2] Carroll also raised a procedural due process claim, alleging that Pitkin County adopted the ordinance in question without providing adequate public notice.  The district court rejected this claim on procedural grounds, and Carroll does not challenge that ruling on appeal.

so and the EHIF remains in escrow pending the outcome of this appeal.

¶ 10    Both parties moved for summary judgment. Carroll argued that Pitkin County violated the Act by imposing an EHIF on its proposed project. More specifically, it asserted that the Act only permits counties to assess impact fees on "new development" and that "remodel construction that does not increase the size of the residential structure" is outside the scope of what the impact fee statute authorizes.[3]

¶ 11    In the alternative, in what the district court interpreted as a substantive due process argument, *see Sundheim v. Bd. of Cnty. Comm'rs*, 904 P.2d 1337, 1347-48 (Colo. App. 1995), *aff'd*, 926 P.2d 545 (Colo. 1996), Carroll suggested that applying the EHIF to its project amounted to an unconstitutional taking because it ran afoul of the Fifth Amendment's "essential nexus" and "rough proportionality" requirements. *See Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 391

___

[3] Although Carroll described the project as "remodel construction," on appeal Carroll does not dispute that its land use application "was submitted, reviewed and approved" by Pitkin County as a "replacement" project for which it needed a development permit.

6

(1994); *Sheetz v. County of El Dorado*, 601 U.S. 267, 275-76 (2024) (explaining that, under the Takings Clause of the Fifth Amendment of the United States Constitution, just compensation is required unless the government can show that conditions placed on a land use permit have an essential nexus to the government's land use interest and are roughly proportional to the development's impact on the land use interest).[4]

¶ 12    The district court rejected both arguments and granted Pitkin County's motion for summary judgment.  Carroll now appeals, arguing that Pitkin County's imposition of an EHIF on its project (1) exceeds the authority granted to the county under the impact fee statute and (2) violates its substantive due process rights.

### III.    Standard of Review

¶ 13    We review de novo a district court's grant of summary judgment.  *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 19.  We also

---

[4] We recognize that substantive due process and Fifth Amendment takings jurisprudence require the application of two distinct analytical frameworks.  *See Town of Dillon v. Yacht Club Condo. Home Owners Ass'n*, 2014 CO 37, ¶¶ 40-45.  Because Carroll does not develop a takings argument on appeal, however, we only consider its contention that Pitkin County's application of the EHIF violated its substantive due process rights.

review de novo questions of statutory interpretation. *Colo. Oil & Gas Conservation Comm'n v. Martinez*, 2019 CO 3, ¶ 19.

## IV. The Act

¶ 14 Carroll argues that the impact fee statute — which allows local governments to impose fees "to fund expenditures by such local government on capital facilities needed to serve new development," § 29-20-104.5(1)[5] — does not authorize local governments to assess an impact fee on anything other than the development "of a raw parcel of land for a specific and/or different use." According to Carroll, because its project involves the demolition and reconstruction of an existing house without a material change in use

---

[5] When Carroll filed this lawsuit in 2022, section 29-20-104.5(1), C.R.S. 2022, included language specifically permitting the imposition of impact fees "to fund expenditures by such local government or a fire and emergency services provider that provides fire protection, rescue, and emergency services in the new development." The General Assembly removed that language in a 2024 amendment to section 29-20-104.5. Ch. 230, sec. 1, § 29-20-104.5, 2024 Colo. Sess. Laws 1411 (effective Aug. 7, 2024). For reasons that the record does not reveal, the district court appears to have relied on the post-2024 version of the statute in its summary judgment order. We do the same because, in its opening brief on appeal, Carroll acknowledges the amendment but says that "the changes to the statute do not impact [its] arguments."

8

or expected occupancy, Pitkin County's imposition of the EHIF contravenes state law.  We are not persuaded.

### A.    Principles of Statutory Interpretation

¶ 15    When interpreting a statute, we first look to its plain language and interpret that language according to its common meaning to give effect to legislative intent.  *Carlson v. Ferris*, 85 P.3d 504, 507 (Colo. 2003).  In doing so, we look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all its parts, and we apply words and phrases in accordance with their plain and ordinary meanings.  *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15; *see Denv. Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011).  If the meaning of the statute is clear from the language alone, our analysis is complete, and we apply the statute as written.  *OXY USA Inc. v. Mesa Cnty. Bd. of Comm'rs*, 2017 CO 104, ¶ 16.  But if the plain language of the statute is "reasonably susceptible of multiple interpretations," then it is ambiguous.  *Elder v. Williams*, 2020 CO 88, ¶ 18.

¶ 16    If the statute is ambiguous, we may then look to interpretive aids such as legislative history, rules of statutory construction, and the consequences of a particular construction to determine the

intent of the legislature. *Pringle v. Valdez*, 171 P.3d 624, 627 (Colo. 2007); *Broomfield Senior Living Owner, LLC v. R.G. Brinkmann Co.*, 2017 COA 31, ¶ 17; *see* § 2-4-203, C.R.S. 2025. When we construe a statute, "we read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts." *Devora v. Strodtman*, 2012 COA 87, ¶ 9. In doing so, we do not interpret the statute so as to render any part of it either meaningless or absurd. *Id.*

## B. Analysis

¶ 17    As discussed above, Pitkin County may account for "the impact of the use on the community or surrounding areas" when adopting local land use regulations. § 29-20-104(1)(g)(I). To that end, the impact fee statute provides that the county may condition the issuance of development permits on payment of "an impact fee or other similar development charge" so long as the proceeds collected are used "to fund expenditures . . . on capital facilities needed to serve new development." § 29-20-104.5(1).

¶ 18    Although the parties agree that this provision defines the scope of a local government's authority to impose impact fees, they fundamentally differ on its purpose and limits.

¶ 19    Focusing on the phrase "new development," Carroll argues that the impact fee statute "is tied to *growth* as opposed to pre-existing development or the latter's existing impact on the local government's capital infrastructure." As Carroll sees it, demolishing a house and building a new one of approximately the same size does not substantially impact the county's "capital facilities" because the new house will presumably have more or less the same number of residents as the old one did. Because such a project does not increase the capacity of the county's housing stock, it does not lead to "growth" and thus does not appreciably increase the county's infrastructure needs. Considering that, in Carroll's view, an impact fee can only be assessed to offset the effects of "growth," the only projects for which the county is statutorily authorized to impose an EHIF are therefore those that involve the development of raw land where no one lived before.

¶ 20    To bolster this interpretation, Carroll relies in part on dictionary definitions of "new" and "development," some of which could be read as suggesting that "new development" involves the construction of buildings on raw land. Carroll also looks to the broader goals of the Act identified in its legislative declaration,

which, among other things, emphasize the necessity of balancing the needs of "a changing population with legitimate environmental concerns," § 29-20-102(1), C.R.S. 2025, "properly plan[ning] for growth and serv[ing] new residents," and "encourag[ing] proper growth management," § 29-20-102(2). And, as further support for its position, Carroll points out that local governments may not use impact fees to remedy any existing "deficiency in capital facilities that exists without regard to the proposed development." § 29-20-104.5(2)(a).

¶ 21    Based on these interpretive aids, Carroll urges us to hold that "new development," as that phrase is used in the impact fee statute, § 29-20-104.5(1), does not occur when — as is the case here — an existing house is demolished and replaced with a new one of the same size. To the contrary, Pitkin County cannot charge an EHIF for its project, Carroll insists, because "[i]mpact fees are not authorized when there is no 'growth' component and no new residents."

¶ 22    Pitkin County views the impact fee statute from a different perspective. According to the county, a local government's authority to impose impact fees is linked to the statute's reference to a

12

"development permit." If a project is extensive enough to require a development permit — meaning that it involves "preliminary or final approval of an application for rezoning, planned unit development, conditional or special use permit, subdivision, development or site plan, or similar application for new construction," § 29-20-103(1), C.R.S. 2025 — then the local government responsible for approving the project may charge an impact fee as a condition of issuing a development permit. As for the statutory focus on "growth," the county adopts a broader view, pointing out that any project significant enough to require a development permit requires workers to build and maintain it, and that such "employee generation" increases the need for workforce housing.

¶ 23    For several reasons, we agree with the county's understanding of section 29-20-104.5(1). By specifically acknowledging the link between development permits and a local government's authority to impose impact fees, the county's interpretation takes into account all the words and phrases in the impact fee statute. *See Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 284 (Colo. 2000) ("We construe a statute so as to give effect to every word, and we do not adopt a construction that renders any term superfluous."). Carroll's

13

proposed interpretation does not. Indeed, while Carroll concedes that "the issuance of a development permit may be conditioned on the payment of an impact fee," it immediately argues just the opposite — asserting that a local government may *not* condition the issuance of a development permit on payment of an impact fee unless the project in question involves "new development." We perceive no such limitation in the plain language of the impact fee statute, which unambiguously authorizes the imposition of impact fees on any project significant enough to require a development permit.

¶ 24    In the same vein, Pitkin County's interpretation of the impact fee statute properly accounts for the phrase "new development." The General Assembly has empowered local governments to impose impact fees to plan for "growth," "serve new residents," promote "orderly development," and balance the "basic human needs of a changing population with legitimate environmental concerns." § 29-20-102(1)-(2). Pitkin County's EHIF does just that — not by comparing the occupancy of a new house to the one it replaces but by ensuring that the people who build and maintain it can afford to live in the local community. Workers, too, are a source of "growth,"

and Pitkin County's effort to ensure that its capital facilities continue to provide services to its entire population is consistent with the General Assembly's purpose.

¶ 25    After considering the legislature's reference to "new development" in the context of the Act as a whole, we conclude that the phrase encompasses more than the development of a raw parcel of land for a specific use or the expansion of development on an already developed property.  Nothing in the impact fee statute or anywhere else in the Act suggests that a reconstruction project that is extensive enough to require a development permit — such as the one at issue here — falls outside the scope of a local government's authority to impose an impact fee.  Therefore, as long as Pitkin County's assessment of the fee accords with the remaining requirements of the Act, it is not prohibited.  We turn to that question next.

## C.    Application

¶ 26    Having decided that the demolition and reconstruction of a house may be subject to an impact fee — provided that the project is substantial enough to require a development permit — our resolution of Carroll's statutory argument is straightforward.  Pitkin

15

County properly imposed the EHIF as a condition of issuing the project's development permit and later assessed the EHIF consistently with the legislatively adopted fee schedule. *See* §§ 29-20-103(1), -104.5(1). That fee schedule broadly applies to projects that require a development permit unless an exemption applies, and it employs a transparent methodology for determining the impact of a proposed development on employee housing in the county. Pitkin County Land Use Code § 8-30-10; § 29-20-104.5(1)(b), (c). Carroll does not challenge the amount of the impact fee — only its applicability to the project. Accordingly, we agree with the district court that Carroll's project falls within the scope of the impact fee statute and that Pitkin County did not exceed its statutory authority by assessing the EHIF here.

## V. Substantive Due Process

¶ 27   Although its argument is not well developed, Carroll also appears to contend that if Pitkin County acted within the scope of its authority under the Act, then it violated Carroll's substantive due process rights by imposing the EHIF. We disagree.

## A. Applicable Law

¶ 28    The Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property without due process of law. Substantive due process forbids the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. *People v. Strean*, 74 P.3d 387, 394 (Colo. App. 2002). The government may not infringe on a fundamental liberty interest, no matter what process is afforded, unless the infringement is narrowly tailored to serve a compelling state interest. *See Jones v. Samora*, 2016 COA 191, ¶ 72.

¶ 29    "While the right to use one's own real property as one sees fit is a property right fully protected by the due process clause of the federal and state constitutions, this use is subject to the proper exercise of local police powers." *Sundheim*, 904 P.2d at 1346. Moreover, "[t]here is no constitutionally protected right to the most profitable[] or desirable use of real property." *Id.*

¶ 30    When, as here, the government action does not affect a fundamental constitutional right, "then the applicable test for reviewing a substantive due process challenge is the rational basis test." *City & Cnty. of Broomfield v. Farmers Reservoir & Irrigation*

*Co.*, 239 P.3d 1270, 1277 (Colo. 2010). "Due process . . . requires only that a municipal ordinance enacted under the police power shall not be unreasonable, arbitrary or capricious, and that it bear a rational relation to a proper legislative object sought to be attained." *Town of Dillon v. Yacht Club Condos. Home Owners Ass'n*, 2014 CO 37, ¶ 26 (quoting *U.S. Disposal Sys., Inc. v. City of Northglenn*, 567 P.2d 365, 367 (Colo. 1977)).

### B.    Analysis

¶ 31    Pitkin County's assessment of the EHIF on Carroll's project easily satisfies the rational basis test. As the district court stated, "Employee generation happens whether the construction occurs on a raw piece of land or on a piece of land with an existing residence on it." And Pitkin County's land use code is reasonably tailored to quantify the impacts associated with that activity. To that end, it relies on a formula that assesses a fee based on the projected construction impacts and the use and maintenance impacts resulting from the proposed development.

¶ 32    We recognize that Carroll questions some aspects of the county's formula. For example, Carroll argues that it makes little sense to charge an EHIF for the housing of construction employees

18

"without consideration of the scope of the project . . . or the fact that these employees may already reside in the area or may be housed by their employers." Likewise, Carroll suggests that it is irrational to only impose "an EHIF on a remodel [sic] if no impact fee was previously paid." None of Carroll's arguments, however, persuade us that there is no essential nexus between the EHIF and Pitkin County's legitimate purpose of ensuring the availability of affordable employee housing. *See Krupp v. Breckenridge Sanitation Dist.*, 19 P.3d 687, 695 (Colo. 2001). Nor do Carroll's arguments suggest a lack of rough proportionality "between the governmental interest and the required [fee]." *Id.* Mathematical precision is not required. *Id.* Moreover, because the EHIF charged for a given project varies depending on the project's size and scope, the formula that Pitkin County uses to calculate the EHIF leads to an "individualized determination that the required [fee] is related both in nature and extent to the impact of the proposed development." *Id.* (citation omitted).

## VI.  Disposition

We affirm the judgment.

JUDGE YUN and JUDGE TAUBMAN concur.